JOHN H. HEROLD, Appellant, v. ESTATE OF GEORGE HARRISON HILL et al., Respondents.

(169 N. W. 592.)

Accounting — action for — trial court — judgment of — for defendant — evidence upon which based — credits for plaintiff — disallowance of — error.

Upon an action for an accounting, judgment in the trial court was had in favor of the defendant, and upon examination of all the evidence upon which such judgment is based, *held*, that such judgment should be modified, for the reason that the plaintiff is entitled to various credits for which he had not been credited, either by the defendant or by the trial court.

Opinion filed May 21, 1918.    Rehearing denied November 18, 1918.

Appeal from a judgment of the District Court of Cass County, North Dakota, Honorable *Chas. A. Pollock*, Judge.

Modified.

*Barnett & Richardson*, for appellant.

The fact that plaintiff in giving his testimony and relating therein the facts as he understood and claimed them to exist, referred to trans-

actions with the deceased, does not render such testimony wholly incompetent and inadmissible. It is not the law that plaintiff, in such cases, is an incompetent witness on every subject and in reference to everything, otherwise relevant, excepting specific transactions had with the deceased. Bank v. Hilliboe. (N. D.) 114 N. W. 1085.

Evidence of the plaintiff as to any and all transactions had with deceased's agents who are still living is competent and admissible. 7 L.R.A.(N.S.) 684, note, and cases cited.

*W. J. Courtney* and *Pollock & Pollock,* for respondent.

The burden of proof is upon the plaintiff. He has not sustained the allegations of his complaint by any competent evidence. The only really competent evidence in the case refutes the allegations of the complaint. Plaintiff's testimony as to transactions had with the deceased is wholly incompetent. Code, § 7871, ¶ 2; Regan v. Jones, 14 N. D. 591; Larson v. Newman, 19 N. D. 153.

GRACE, J. Appeal from the judgment of the district court of Cass county, Charles A. Pollock, Judge.

This is an action for an accounting, brought by the plaintiff against the defendant John A. Hill, as administrator of the estate of George Harrison Hill, deceased.

It appears from the pleadings that plaintiff held a certain crop contract for the purchase of land from one Peter McLachlin, then owner of said land, which land was described as the east one half of section 27, township 143, range 53, Cass county, North Dakota. It also appears that during the year 1906, plaintiff and said George Harrison Hill entered into an agreement wherein Hill agreed to take over said premises from McLachlin, and to take over and pay the McLachlin contract, and issue to the plaintiff a new contract for deed covering the premises. It also appears that at the time of taking over such contract to such land by Hill to McLachlin, and the issuance of the new contract by Hill to plaintiff, the plaintiff was indebted to Hill on account of other indebtedness, exclusive of the contract, in the sum of $2,720.24; $647.76 of this other indebtedness was added to the contract price of such land as between Hill and the plaintiff, and of course reduced the other indebtedness to that extent. The complaint alleges that such other indebtedness was from time to time reduced by pay-

ments until December 18th, 1910, when a new note was given for the unpaid balance in the sum of $1,520.40, which note the plaintiff alleges has been paid. Plaintiff further alleges that, during the years 1910, 1911, and 1912, he farmed certain school lands for said Hill, being part of section 36, township 143, range 53. Plaintiff claims, in his complaint, that it was agreed between Hill and the plaintiff that the plaintiff should receive credit upon the contract and note, of indebtedness existing and owing from plaintiff to Hill, for the reasonable value of plaintiff's services in farming and caring for said land and the crops thereof, and that by reason thereof, the plaintiff is entitled to credits to the extent of $2,200. Plaintiff also makes claim for certain threshing performed for Hill and one Linderman during the years 1911 and 1912, on a portion of the school land which Linderman had rented from Hill. In addition to this, plaintiff also produced at the trial a large number of checks which were made payable to Hill and which were cashed and the money received by Hill. There were also some receipts, executed by Hill to the plaintiff, for other money, and there are other various claims by the plaintiff against Hill, all of which are referred to in the complaint, the pleadings, or the testimony, and to which we need not more specifically refer, but which aggregate $9,000.

The answer admits the making of the contract from Hill to the plaintiff, and sets forth that the consideration of such contract was $6,720, made up of the amount owing McLachlin plus $647.76 of the other indebtedness owing from plaintiff to Hill. In addition to this, the answer claims, by reason of the other indebtedness, that plaintiff was owing Hill the further sum of $2,203.84. Defendant, by way of further defense, alleges that Hill loaned money to the plaintiff, advanced money for him and on his account, furnished him merchandise, and that from time to time settlements were had and made between said plaintiff and Hill, in which settlements plaintiff was charged with such loans and advances of money and merchandise, and credited with all payments made by him to said Hill, and the defendant claims a balance due upon such contract and all other alleged indebtedness from plaintiff to Hill in a very large amount, and the trial court awarded the defendant judgment in the sum of about $9,683.97.

It will be seen, therefore, that the parties are a great distance apart as to the actual condition of the account between them. It is perfectly

plain that there is gross error somewhere. It is perfectly plain, also, that the estate of George Harrison Hill must account to the plaintiff for all money which it is shown Hill received, and must show the application of such money either upon the land contract or upon other indebtedness due from plaintiff to Hill. The estate of George Harrison Hill must also show where any other credits which the plaintiff was entitled to were credited, that is, upon what indebtedness were such credits, if any, applied. We will refer to these matters further when we discuss some of the credits other than payments of money to which plaintiff claims to be entitled. The defendant must account for all the payments of whatever kind or character made by the plaintiff to George Harrison Hill, and all the credits to which plaintiff may show himself entitled, and if the defendant fails to account for any such payments whether by check, money, or other credits, it would seem that the plaintiff, as a matter of law, would be entitled to recover judgment for all such credits and payments for which he has not been credited, and failure of the defendant to account to the plaintiff for all such credits, moneys, and checks paid to George Harrison Hill, cannot be excused on the ground that the accounts were not kept in as good order from the standpoint of bookkeeping as they might have been, nor by the further fact that the transactions between the parties were many. It seems that a fairly good record of a great deal of the business between the parties was kept.

The first matter which is contended by the plaintiff to be an error is the amount of the McLachlin contract at the time it was taken over by Hill. At that time, the contract that had existed between McLachlin and Herold was figured up and when $647.76 of plaintiff's other indebtedness was added to the balance estimated to be due upon the contract between McLachlin and Herold, the amount was $6,720, which was the amount inserted in the new contract between Herold and Hill as the balance due upon the contract for the land in question. The plaintiff insists that the total of the balance of such contract between McLachlin and Herold, as figured by Wilson, is too great by $200. The difference between plaintiff's figures and those upon which the defendant acted probably arises from the employment of a different method in computing interest. It may be possible that the method adopted by the defendant was not the most accurate method, but it

41 N. D.—3.

must also be conceded he must have settled and paid McLachlin upon the basis of the amount found to be due McLachlin by the method of calculation used by defendant. If this assumption be true, Hill gained nothing even if the most proper method of computing interest were not used. Herold and Hill entered into the written contract wherein Herold agreed to pay the balance due upon the new contract which had been ascertained, to which had been added a certain portion of plaintiff's indebtedness to which we have above referred. There appearing to be no fraud in the matter of ascertaining the balance due upon the McLachlin contract, nor any undue advantage appearing intentionally to have been taken and Herold, having made no complaint at the time the amount thereof was ascertained, nor at any time so far as we have been able to determine until the bringing of this action, and a long period of time having elapsed since the making of the new contract, Herold must be held to be bound by the amount inserted in the new contract.

We are of the opinion that the amount stated in the new contract, less the $647.76 of other indebtedness which was added to the balance due on the McLachlin contract, must be taken to be the actual balance due upon the McLachlin contract at the time of the execution of the new contract, and that that balance, together with $647.76, must be conceded to be the actual consideration for the new contract at the time of its execution. The plaintiff's claim, that the balance due upon the McLachlin contract is $200 in excess of the true amount due thereon at the time the same was taken over by Hill, cannot be allowed.

At the trial, the plaintiff offered in evidence ten checks aggregating $2,598.74, which were issued by the plaintiff to G. H. Hill and they were indorsed by Hill and paid by the bank from which they were drawn, and Hill got the money for them. These checks were Exhibits 12, 13, 14, 15, 16, 23, 21, 18, 25, and 26. Plaintiff claims he received no credit for any of these checks upon Exhibit 11, the note representing the balance due under the new contract or otherwise. On examination, such note disclosed no credit for any of such checks with one exception, Exhibit 26, a check dated March 5, 1910, for $134, is credited on Exhibit 11. This, deducted from $2,598.74, the sum of such checks, leaves $2,464.74, which was not indorsed upon Exhibit

'11, nor does it appear that the plaintiff received credit upon any other obligation which he owed the defendant. Clearly, the plaintiff is entitled to credit for the $2,464.74. These checks seem to have been disregarded by the trial court. This may have been on the theory that the indorsement of the words, "Payment on land" by the plaintiff on the checks in question after their payment vitiated them as a credit upon any indebtedness owing by the plaintiff to the defendant. We think it must be conceded that the additional words, "Payment on land," were placed upon the checks after they had been paid and after their return to the possession of the plaintiff; but if the plaintiff, by the addition of such words after the return of the checks to him, had no evil motive in adding such words to the checks, and did not thereby gain any advantage for himself, and there was no evil intent, and the motive was identification, it is difficult to see how such action could vitiate the checks, even if the defendant had not consented to the placing of such additional words upon the checks after their return to plaintiff's possession.

It must be conceded that the plaintiff had, in the first instance, legal right to direct upon what debt, note, or obligation, the amount of such checks should be applied. We do not believe that making such indorsements on checks after their return, as in this case, is to be encouraged, but we cannot readily understand how the checks would be vitiated to the extent that plaintiff would be entitled to no credit for the amount of money, conclusively proved to have been received by Hill by reason of having received and cashed such checks.

Plaintiff claims that the indorsement on the check "Payment on land" was placed upon the checks at the suggestion and consent of G. H. Hill. The witness Gould substantiates, in his testimony, this claim. If this testimony is true, and it is a fact that Hill authorized the plaintiff to indorse the checks with the additional words, showing that the payments were upon the land, there was certainly no reason why such indorsement could not lawfully be placed upon such checks. It is evident that, in this case, the only effect of such indorsement would be to indicate the obligation to reduce which the amount of such checks should be applied.

If the defendant could show that the amount of such checks was in fact applied upon any other obligation owing from the plaintiff to de-

fendant, in that event, in view of all the circumstances, and even though the possible indorsement might be considered a direction to apply the sum of such checks to the discharge of a certain debt, equity might not interfere to compel application of the sum of such checks upon the note representing the amount of the land contract, although it is a general rule that the debtor has a right to direct the application of the payments to a particular debt, where he owes the same party two or more obligations.

The next material point that we consider is the crops and their disposition for the years 1911 and 1912 from the east one half of section 27, township 143, range 53, being the land which is the subject of sale from Hill to Herold and the quarter of school land which was tilled by plaintiff. One of the disputed questions is the manner in which the plaintiff leased the school land. Herold claims that the school land was leased from the state by Hill, who paid the state, and that the plaintiff paid the rent for the school land to Hill. Plaintiff claims that he furnished the seed and was to get the entire crop. Herold claims this same method of renting existed in the years 1911 and 1912 as to the school land. It was shown by Mr. Eddy, deputy county treasurer of Cass county, that Hill leased the N. W. $\frac{1}{4}$ of section 36, township 143, range 53, from the state for the years 1908 to 1913 inclusive. This was the same quarter of school land farmed by the plaintiff.

We are of the opinion that, at least during 1905 and 1906, plaintiff paid the defendant for the use of the school land as testified to by the plaintiff. Exhibit 4 shows the charge against the plaintiff by the defendant for $162.85 upon the land contract for 1905 and $155.25 for 1906. The plaintiff testifies that these amounts were what he paid for the use of the school land for those years. The plaintiff seeks to show that he had a similar arrangement with the defendant for the school land during the years 1911 and 1912. The claim on behalf of the defendant is, he leased the school land to the plaintiff, furnished the seed, and was to pay half the threshing bill and was entitled to half the crop.

Linderman's testimony is to the effect that in 1909 he had a talk with Herold as to the terms he had the land upon, and that the plaintiff said he had it rented the same way that Linderman had. Linderman testified that he told him how he had his land rented, which was on

shares, Hill to furnish the seed and pay his share of the thresh bill, and the testimony further showing, in effect, that Linderman was to get paid for hauling Hill's share to the elevator. This was claimed by Linderman to be the terms of the leasing of the school land in 1909 when Linderman claimed that he and Herold leased the school land for five years.

Linderman being a disinterested witness, it would appear that this testimony should receive considerable credit, and we believe that it outweighs the testimony of the plaintiff with reference to the terms upon which the school land was rented. We hold, therefore, that the plaintiff leased the school land from the defendant upon these terms; that is, upon the terms above stated by Linderman. It is conceded that the grain raised upon the school land which plaintiff farmed for the year 1911 was of the value of $762.05. On plaintiff's Exhibit 6, being the note secured by the chattel mortgage, there was indorsed $381.05. This undoubtedly is the value of the plaintiff's half the crop from the school land for 1911, and disposes of the contention of the crops upon the school land for that year. As to the crop on the W. ½ of section 27, for 1911, the plaintiff shows there was wheat of the value of $1,055, barley $580, and flax of the value of at least $50, and by adding to this half the value of the crops on the school land, $381, and $315, for the hay thereon, there is a total of $2,381 which the plaintiff should have been credited, but was in 1911, in fact, only credited with a total of $1,367.43, leaving a difference of $1,013.57 with which the plaintiff was entitled to be credited in the fall of 1911, and he is entitled to that additional credit with interest thereon at the legal rate since that time.

The plaintiff showed, by his testimony, that he got none of the grain and witness Gould testified that Hill admitted, in his presence, he had sold all of the 1911 crop on the half section. There was no testimony disputing the value of the hay, and the value thereof as testified to must be taken as the true value.

As to the 1912 crop on the school land, the plaintiff testifies there were 500 bushels of wheat at 80 cents a bushel, 500 bushels of oats at 25 cents a bushel, and 60 tons of hay at $4.50 a ton. In an account book which the defendant kept, Exhibit 116, there was entered there-

in as the amount of crop produced for the year 1912 upon the school land the following:

| | |
|---|---:|
| 283 bushels of oats, value | $ 62.40 |
| 2 loads of wheat, value | 137.60 |
| 4 loads of wheat, value | 266.20 |

and that a credit of one half of this amount is allowed plaintiff, or $233.10. To this a further credit is added for threshing for Hill and Linderman in the amount of $516.56, making a total of $749.66. We take as the true amount of grain produced on the school land for 1912, the statement thereof as contained in Exhibit 116. Against the $749.66 is charged, in the same Exhibit 116, on the opposite page, and entered as paid by Hill for Herold the following amounts:

| | |
|---|---:|
| Bert Pamer | $ 25.00 |
| St. Anthony note and three months' interest | 267.75 |
| August 24, 1912, cash | 50.00 |
| September, check | 100.00 |
| July 14, 1913, Hillsboro Bank | 17.50 |
| Hay land | 40.00 |
| Linderman work | 155.00 |
| Total | $655.25 |

We find no testimony disputing any of these payments for Herold by Hill as set forth on page B of Exhibit 116. The total of these payments and credits set forth on page B is $655.25, instead of $755.25, as shown by the total of the payments and credits on said page B. In other words, Hill made a mistake of $100 in finding the sum of said payments and credits. Herold is therefore entitled to a further credit of $94.41, the difference between his half of the crop on the school land for 1912 which is $233.10, plus the $516.56 threshing account allowed, a total of $749.66, and the amount of the payments and credits allowed him by Hill on page B, $655.25, which leaves a balance of $94.41, for which Herold is entitled to credit, with interest since 1912 at the legal rate.

This disposes of the crop on the school land for the year 1912 and $516.56 of the threshing bill. Plaintiff claims, on the half section in 1912, there were 1,500 bushels of wheat at 85 cents a bushel. He also admits that he sold about half of this wheat, and the balance or remaining half was sold by Mr. Hill. Plaintiff claims that he got no part of the half sold by Mr. Hill, evidently meaning that he got no credit for half the crop sold by Mr. Hill. In Exhibit 116, page C, it appears that Hill gave Herold credit for wheat of the value of $350.75 for the year 1912. From this credit the defendant deducted taxes in the amount of $165.38, leaving a net credit of $185.-37 to Herold. This amount is indorsed on the land contract December 23, 1912.

We take this statement of Hill's as to the value of one half of the crop received from the home half section in 1912, as the correct amount of the value of half of the crop received from the home place in 1912, for which plaintiff received full credit. The plaintiff testified that there were 60 tons of hay on the school land for 1912, valued at $4.50 a ton. This makes $270. There is no testimony disputing the amount or value of this hay, and the plaintiff, therefore, must be credited with $270, with interest thereon since 1912 at the legal rate. This disposes of all the crops for the years 1911 and 1912. As to the threshing bill claimed by the plaintiff against the defendant for the years 1911 and 1912, it appears from the plaintiff's own testimony that such threshing bill was threshing for the years 1911 and 1912 upon land in the vicinity of the school land which the plaintiff was farming. It is difficult to tell just where or upon what land such threshing was done. Whether it was all done for Linderman on his school quarter, or whether it was partly on section 2, and for whom, the testimony does not disclose. Plaintiff has already received credit for $516.56. Under the record as it now stands, we do not believe he is entitled to any further credit for threshing, and we so hold.

Referring to Exhibit 6, the promissory note for $1,520.40 dated December 18, 1910, with interest at 10 per cent per annum, executed by the plaintiff to the defendant, the trial court found there was on the 1st day of March, 1916, $1,209.68 remaining unpaid upon said note. We are of the opinion that such finding of the trial court is

sustained by the testimony. We are of the opinion, also, the Kernahan Dickson note, principal and interest to September 1, 1914, amounting to $478.60, was properly chargeable to the plaintiff; also the $103.94 to the Stewart Mercantile Company and $11.80 credit for cattle were properly chargeable against the plaintiff as advances made to him by the defendant. Plaintiff also seeks to show that there is a mistake in the indebtedness claimed by Hill against Herold at the time the open indebtedness from Herold to Hill was placed in Exhibit 5, the promissory note for $2,203.84. In order to substantiate plaintiff's claim he offers Exhibit 4A in evidence upon which there is a memorandum to the following effect: "Mortgage— $845.10." Plaintiff claims that at the time of the settlement on December 15, 1906, there was returned to him a note for $900. Plaintiff claims that the $845.10 mortgage item was represented by a $900 note marked Exhibit 10. Plaintiff's brief refers to the note as Exhibit 30, but Exhibit 30 is only for $89.74. Plaintiff claims that the indorsements on Exhibit 10 reduce it so that there would be approximately $500 due thereon December 1, 1906, instead of $897.-04, and desires the difference with interest to be deducted from the balance due upon the $1,520 note, claiming the error was a continuous one in all the transactions with reference to the notes representing the open indebtedness at the various times from the execution of the original note for the open indebtedness and in renewals thereof.

It must be conceded that the plaintiff and defendant made a settlement on December 15, 1906, and it must be assumed there was an accounting had between them at that time, and a statement of the balance due agreed upon, for which the plaintiff gave his note for $2,203.84, upon which payments were subsequently made, and balance of which note was placed in the renewal note of $1,520. With this view of the matter, we hold that the plaintiff is concluded by the settlement of the open indebtedness entered into by the plaintiff and defendant on December 15, 1906, and that such settlement cannot be questioned, and especially not at this late date. The law looks with favor upon settlements, and where they are honestly and fairly entered into, as this settlement seems to have been, such settlement should be considered as disposing of all disputed matters

which were in contemplation of the parties at the time of the settlement and which received their consideration.

We hold that the plaintiff is bound by his settlement of December 15, 1906, as to the amount of his open indebtedness, then owing to the defendant, and that the alleged error of $397.04, with interest thereon, cannot be allowed to plaintiff.

Insofar as the matters, as determined upon this appeal, affect the judgment entered in the lower court, such judgment shall be modified in accordance with this decision, and made to conform to the conclusions reached herein.

The costs allowed the administrator in the lower courts shall remain the same, appellant to have the costs on this appeal.

CHRISTIANSON, J. (dissenting). To administer justice in this case is, indeed, a perplexing problem. The lips of one of the parties to the transactions involved are sealed by death. The other party was sworn, and testified as a witness in his own behalf. He has a great deal to gain by a favorable determination. He admitted that he had made certain statements variant from his testimony. He had made certain notations upon checks after they had been cashed. These notations may have been made innocently, but the notations were favorable to the plaintiff, and it seems that his actions were susceptible of being construed as not altogether innocent.

There is much force in the deductions reached by Mr. Justice Grace on most of the propositions involved. But inasmuch as the trial court, who heard and saw the plaintiff testify, apparently arrived at the conclusion that he was unworthy of belief, I am not prepared to say that the trial court's findings should be overturned. The trial judge saw and heard the plaintiff and the other witnesses. We have merely the cold record before us.