[File No. 6445.]

## FIRST NATIONAL BANK OF MANDAN, NORTH DAKOTA, a Corporation, Appellant, v. AGATON LARSSON, Respondent.

(271 N. W. 289.)

Opinion filed January 18, 1937.   Rehearing denied February 19, 1937.

*Sullivan, Fleck & Sullivan,* for appellant.

*Charles D. Cooley* and *Hyland & Foster,* for respondent.

Morris, J. This is an action on a promissory note which was tried, before the court, a jury having been waived. The plaintiff appeals from a judgment of dismissal and demands a trial de novo under chapter 208, Session Laws of 1933. The note, dated March 10, 1934, and upon which about $1900.00 was due at the time of trial, is a renewal of an indebtedness which had been renewed from time to time for a number of years.

At the time of trial the plaintiff held for collection another note dated June 29, 1931, given by Anton P. Ness to the defendant in the sum of $1617.71 upon which three $25.00 payments were endorsed, the last endorsement being October 6, 1933. This note came into the plaintiff's possession through the following transactions. In March 1930 the defendant, who had performed labor and furnished material in connection with the improvement of the residence property of Anton P. Ness, turned over to a collector a claim against Ness for $1,700.00. The claim was not then in the form of a note. The wit-

ness, Hess, was president of the bank and a few days after the claim had been turned over to the collector, he wrote the defendant as follows:

"I am sorry that you turned your claim against Ness over to Abner Larsson for collection as it made Dr. Ness feel badly and will not help get your money any sooner.

". . . His last payment to you was I think in December and he paid you considerable money already. Therefore, I wish you would come in and see me about it and withdraw the claim from Larsson, as he is not going to be able to get it for you any quicker than I can.
. . . ."

On receipt of this letter the defendant withdrew his claim from the collector and turned it over to the plaintiff. Hess obtained from Ness a note representing defendant's claim concerning which he wrote to the defendant on April 29, 1930, as follows:

"I procured a note from Anton P. Ness $1,765.00 for one year but payable at the rate of $100.00 to $200.00 per month, beginning May 15th, 1930. I wanted him to pay at least $100.00 now but he said he had some interest payments to meet the 1st of the month on his cattle loan, but thought by May 15th he could start making the payments.

"I asked him to have his wife sign the note also but he did not want to ask her to." Hess succeeded in collecting $300.00 on this note. It was later turned over to the defendant and was in his hands when on April 18, 1931 Hess wrote him, ". . . I will have a check for $100.00 to apply on the Ness note and so you can fix up your interest here. Wish you would bring in the Ness note and leave it with us and from now I will arrange to collect at least $100.00 per month from him as business will pick up with him now and am sure he will be able to do it. By leaving the note here as collateral we can use that as a leverage on him that the note is here as collateral, and the payments must be made." After the receipt of this letter the Ness note was delivered to Hess for collection and as collateral to the indebtedness which the defendant owed the plaintiff bank. On June 29, 1931 the Ness note to the defendant was renewed in the sum of $1617.71 which renewal was still in the hands of the plaintiff up to the time this suit was brought. On January 18, 1932 Hess wrote to the defendant, "I hope

to be able to get some money from Ness by the end of the month to apply on your note, but you should arrange to pay something besides and if you can pay your note down to the amount of the Ness note, we will endeavor to work that out of him."

Again he wrote the defendant, "I wish you would come in next week and arrange to fix up your note, pay what you can on it so we can renew it. I had expected to get a payment out of Ness but on account of the bad winter and impossible roads in the spring his income was not so good, but from now on it should be better."

"At any rate, wish you would pay your note down to the amount he is owing you and I think I will eventually be able to collect the amount he owes you, probably in monthly installments. . . ."

On December 11, 1932, Hess wrote the defendant again, "I wrote you sometime ago about your note and paying something on it and if possible cut it down to the amount of the Ness note, as I figure we will be able to work that out of him in time—probably by fall. So if you can manage to cut your note down to the amount of his note we will expend our efforts to collect his note by fall. . . ."

During the time that these letters were written Ness was indebted to the plaintiff bank in excess of $12,000.00. This indebtedness was partially secured. In addition to sums realized from its security the plaintiff collected from Ness $1,700.00 in $100.00 payments, which were applied upon Ness's debt to the plaintiff. The defendant did not know of Ness's indebtedness to the bank nor of his payments upon this indebtedness. The defendant claims that the plaintiff while acting as his agent for the purpose of collecting the Ness note, received from Ness sufficient cash to pay the same, and that in failing to inform the defendant of Ness's indebtedness to the bank and its collections from him, the bank failed in its duty to him as his agent, and that these acts amount to bad faith and a constructive fraud upon the defendant which entitle him to damages equal to the amount due on the Ness note, and since this amount exceeds the note upon which this suit is brought he is entitled to a dismissal of the suit. The trial court found in favor of the defendant's contention, and ordered the suit dismissed.

The plaintiff contends that Hess was acting as the defendant's agent in his individual capacity and that the bank was not the defend-

ant's agent for the purpose of collecting the note. It also contends that the payments which were received from Ness were applied on Ness's indebtedness under his specific directions. To this latter contention the defendant answers that even if the payments were applied under Ness's direction it was the duty of the bank as defendant's agent to disclose its relations with Ness, including his indebtedness to it and his payments thereon, and that the failure to do so amounts to such a breach of duty on the part of the bank as will make it responsible in damages to the extent of the amount due upon Ness's note to Larsson.

During the time that the letters from which we have quoted were written, Hess was president of the plaintiff bank and continued as such until July 1934. He wrote these letters upon the bank's letterheads bearing his name as president. Some were signed as president, others were not. The correspondence deals not only with the collection of the Ness note, but also with the defendant's indebtedness to the bank. We have no hesitancy in saying that in the transactions concerning the Ness note Hess acted as an officer of the bank, and that the bank and not Hess as an individual, became Larsson's agent for the purpose of collecting the Ness note.

Hess testified that the payments made by Ness were credited in accordance with the debtor's definite and affirmative instructions. This testimony is undisputed. A debtor making a voluntary payment to a creditor to whom he owes several obligations, has a right to direct to which debt or debts the payments shall be applied. Herold v. Hill, 41 N. D. 30, 169 N. W. 592; Stebbins v. Lardner, 2 S. D. 127, 48 N. W. 847; 48 C. J. 643; 21 R. C. L. 88. The money so paid is the property of the debtor, and he, therefore, has the right to determine how it shall be applied. In this case, the plaintiff was in possession of two obligations of the debtor, one it held as creditor, the other as collector. The debtor had the right to determine and direct upon which debt his payments should be applied. The bank had no right to apply the payments other than as directed and cannot be held liable for failure to apply upon the defendant's note payments which the debtor had directed to be applied upon his indebtedness to the plaintiff.

Although the plaintiff could not apply Ness's payments contrary to

his direction, it nevertheless occupied a very delicate position due to the fact that it had sought and obtained Larsson's note against Ness for collection while it was a substantial creditor of the maker. The plaintiff, in soliciting and accepting the collection under these circumstances, assumed an agency which charged it with the duty of advising Larsson of its relationship with Ness. In failing to advise Larsson that it was a creditor of Ness and was receiving payments from him, the plaintiff was guilty of a breach of duty to Larsson. Section 6122, Compiled Laws of North Dakota for 1913, provides that "An employee who has any business to transact on his own account similar to that intrusted to him by his employer must always give the latter the preference. . . ." Section 6142, Compiled Laws of North Dakota for 1913, requires that "An agent must use ordinary diligence to keep his principal informed of his acts in the course of the agency." If an agent has interests adverse to the principal as to matters within the scope of the agency, it is the agent's duty to reveal such interest to the principal. Am. Law Inst. Restatement, Agency, § 381.

A breach of duty alone is not sufficient to warrant the recovery of substantial damages by a principal against his agent. The principal must show that he was, in fact, damaged by the breach of duty, the measure of damages being the actual loss sustained. A. G. Becker & Co. v. First Nat. Bank, 15 N. D. 279, 107 N. W. 968; Olsness v. State, 58 N. D. 20, 224 N. W. 913.

The defendant asserts that the loss which he sustained is prima facie the amount of the note with interest, and in support of this contention cites Commercial Bank v. Red River Valley Nat. Bank, 8 N. D. 382, 79 N. W. 859. In that case two notes were sent to the defendant bank for collection. It knew that the maker was in precarious financial circumstances and failed to return the notes, or to notify the owner of the circumstances of the maker, or the non-payment of the notes, until from fifteen to thirty days after their maturity. In the meantime the bank obtained security for its own claim on all the debtor's non-exempt property, and the court applied the rule that the loss sustained was prima facie the amount of the notes with interest. The facts in that case differ materially from those before us. The bank, by obtaining security for itself on the debtor's non-exempt property, materially altered the debtor's financial condition in so far as his

property was subject to the enforcement of the collection of the unsecured notes. In this case it does not appear that Larsson's note has been rendered less collectible by the plaintiff's breach of duty. Collection of the note is not barred by the statute of limitations. No one has been released from liability. The fact that Ness owed the bank considerable sums of money does not establish his insolvency. In the absence of evidence to the contrary, solvency is presumed. Schooler Motor Co. v. Bankers' Trust Co. 216 Iowa, 1147, 247 N. W. 628. The only direct testimony regarding the debtor's financial responsibility is the opinion of Hess, who thought that Ness's financial responsibility was much better at the time of the trial than in June 1931.

Mechem on Agency, 2d ed. § 1320, says: "The measure of damages in an action against an agent for negligence in collection is the actual loss sustained. The negligence being established, *and it appearing with reasonable probability that but for such negligence the loss would not have happened,* that loss prima facie is the amount of the claim, but the agent may show that, notwithstanding his negligence, the principal has suffered no loss, and the recovery can then be for nominal damages only." This rule presupposes not only negligence, but also a loss occasioned thereby. It is elementary that before there can be a recovery for consequential or compensatory damages there must be an actual loss and a reasonable probability that the loss would not have occurred had it not been for the agent's negligence or, as in this case, breach of duty. An agent should not be compelled to respond in substantial damages unless his acts or omissions in contravention of the duties of his agency have caused an actual loss to his principal. 8 Zollman, Banks & Bkg. Permanent ed. § 5673; Royal Bank v. Universal Export Corp. (C. C. A. 2d) 10 F. (2d) 669; Moldawer v. Trust Company of N. A. 59 Pa. Super. Ct. 155; Jefferson County Sav. Bank v. Hendrix, 147 Ala. 670, 39 So. 295, 1 L.R.A.(N.S.) 246, and note. If the principal establishes such loss the amount thereof is prima facie the amount of the paper in question. 8 Zollman, Banks & Bkg. Permanent ed. § 5674; 6 Michie, Banks & Bkg. Permanent ed. chap. 10, § 100.

In this case the defendant has shown a breach of duty on the part of the agent, but has wholly failed to show that this breach of duty has resulted in actual damage to him. It does not appear that the

agent's breach of duty resulted in non-collection, or that the note is not worth as much today, or is not now as readily collectible as it ever was. The defendant, therefore, cannot claim that he is prima facie damaged to the extent of the face of the note. He has only proved nominal damages. Since from the record in this case it appears to us that the defendant may have suffered damages for which competent proof is available, the judgment is reversed and the case is remanded for further proceedings.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE and BURR, JJ., concur.