MILLER *v.* DRAPER.

[Cite as Miller v. Draper (1972), 34 Ohio Misc. 11.]

(No. 317882—Decided December 27, 1972.)

Franklin County Municipal Court.

*Messrs. Butler, Cincione & DiCuccio,* for plaintiff.
*Messrs. Sebastian, Durst, Marsh & Redmond* and *Mr. William S. Friedman,* for defendant.

WEST, J. This action arises from an automobile accident in Columbus on January 9, 1970. Plaintiff collided with the rear of a car which stopped in line of traffic in front of him. Defendant, driving a car in the lane of traffic behind plaintiff, was unable to stop and hit the rear of plaintiff's car.

Plaintiff referred his claim for collision damage to his insurer, Pioneer Mutual Casualty Company. Pioneer ascertained the damage to the rear of plaintiff's car amounted to $136.17, and a subrogation claim for that amount was

presented to defendant's liability carrier, Motorists Mutual Insurance Company.

On April 6, 1970, Motorists issued its settlement draft for $136.17 to Pioneer and plaintiff, intending it as full and final settlement of any and all claims of plaintiff. By this date, plaintiff's car was in a body shop for repairs, where Pioneer forwarded the draft for plaintiff to restrictively endorse payable to The Pioneer Mutual Casualty Company.

On the face of Motorists' draft the following words appear: "Full and final release of all claims against Gerald L. Draper."

When plaintiff called at the body shop for his car, he was surprised to learn his insurer was treating the matter as two separate collision claims requiring him to pay $50 deductible on each. He also was disturbed about the language purporting to release all claims against defendant. Plaintiff called his attorney and then endorsed the draft. No one coerced him in any manner to sign the draft, and no one made any representations to him that the draft was anything different than what it appeared on its face to be.

Plaintiff was injured in the accident January 9, 1970, and had been to a doctor on January 13, 1970, once again in February and twice more in March 1970. Plaintiff testified that in signing the settlement draft he thought he was releasing only his property damage claim. He claims medical expenses of $123 but does not claim loss of earnings, impairment of earning capacity or permanent injury, having amended his complaint at time of trial to eliminate allegations with respect to these elements of damage.

Plaintiff did not place defendant or his insurer on notice of plaintiff's injury claim until about eleven months after he endorsed Motorists' draft. On March 19, 1971, plaintiff's attorney wrote to defendant asserting the claim for injuries. Defendant promptly referred the letter to his liability carrier, Motorists Mutual Insurance Company. In turn, Motorists wrote plaintiff's attorney March 25, 1971, informing him they had a release from plaintiff.

Notations placed on a negotiable instrument at the time of the execution thereof with the intention of making

them a part of the contract constitute a part of the contract. The notation on the face of the settlement draft before us, "Full and final release of all claims against Gerald L. Draper," is simple, direct and unambiguous. Payment was offered for release of all claims; acceptance by plaintiff's endorsement made the release effective. "A release may be invalid—that is either void or voidable—because of * * * fraud, mistake, ignorance, duress, or undue influence or because the nature of the release is such that it contravenes public policy." 47 Ohio Jurisprudence 2d 239.

A release having been proved by defendant, the burden shifts to the plaintiff to prove by clear and convincing evidence facts which would avoid the release. *Sloan* v. *Standard Oil Co.* (1964), 177 Ohio St. 149. This, plaintiff has failed to do.

Plaintiff's claim basically is that while he knew and understood the nature and extent of his injuries, defendant had no knowledge whatsoever about the injuries. Furthermore, since plaintiff had made no claim for injuries at the time he accepted the draft, with the release written on it, for the exact amount of his automobile damage, it was his intention to release only the property damage claim.

Here the plaintiff not only had an opportunity to read and understand the clear language of the release on the draft, but he also consulted with his attorney concerning it before deciding to endorse it. He may have been mistaken about its legal effect.

Where a person who has been injured in an accident reads and understands a contract of settlement and release, signs such contract for a valid consideration, makes no claim that such contract was procured by fraud, and makes no application to set it aside, he is bound by its terms, even though he may not know its legal effect. *Connelly* v. *United States Steel Co.* (1954), 161 Ohio St. 448.

The court finds it was the intention of defendant's insurer to buy peace for the defendant and secure a release of any and all claims even though it had no knowledge of the injuries plaintiff knew he had sustained.

"A release may be avoided where the releasor can es-

14

tablish by clear and convincing evidence that it was executed by mutual mistake, as between himself and the releasee, of a past or present fact material to the release, as where there was a mutual mistake as to the existence of any injury of the releasor * * *." *Sloan* v. *Standard Oil Co., supra.*

In the present case the court has found no mutual mistake of fact, only a possible mistake on the part of plaintiff as to the legal effect of the release.

This finding disposes of the matter at hand without consideration of the questions of liability, proximate cause and extent of injuries. The case is dismissed at plaintiff's costs.

*Case dismissed.*