The NATIONAL BANK OF HARVEY, a National Banking Association, Plaintiff and Appellee,

v.

Donald P. PAULY, d.b.a. Don Pauly Cheese, Inc., and Don Pauly Cheese, Inc., a Wisconsin Corporation, Defendant and Appellant.

Civ. No. 9563.

Supreme Court of North Dakota.

May 9, 1979.

Lamb, Schaefer, McNair & Larson, Fargo, for plaintiff and appellee; argued by Leland M. Stenehjem, Jr., Fargo.

Schlosser & Schmitz, Bismarck, for defendant and appellant; argued by Orell D. Schmitz, Bismarck.

SAND, Justice.

The issue involved in this case concerns the admissibility of parol evidence to vary the terms of a written notation contained on the face of a check. The appellant, drawer of the check, argued it was error on the part of the trial court to allow the admission of parol evidence to establish an oral agreement varying the terms of a notation which stated the purpose for which the check was issued. We affirm.

The National Bank of Harvey, appellee, filed a summons and complaint on 3 August 1977 seeking judgment against Donald P. Pauly, individually, and Don Pauly Cheese, Inc., a Wisconsin corporation, for payment on a $30,000 promissory note plus interest. The defendant appellant answered, asserting as an affirmative defense that the note had been satisfied as evidenced by a draft on the account of Don Pauly Cheese, dated 26 July 1975 in the amount of $30,000 payable to the National Bank of Harvey. A bench trial was held on 7 April 1978. Findings of fact, conclusions of law, and order

for judgment were filed by the district court dismissing as a party Donald P. Pauly individually, but otherwise ordering entry of judgment in favor of the National Bank of Harvey. Judgment was entered and Donald P. Pauly, individually, and Don Pauly Cheese, Inc., filed a timely notice of appeal from the judgment.

Donald P. Pauly (Pauly), a resident of Wisconsin engaged in the operation of a cheese manufacturing and wholesale business, became a principal stockholder, a member of the board of directors, and the president of Harvey Cheese, Inc. (a cheese manufacturing plant located in Harvey, North Dakota) in 1973. Don Pauly Cheese subsequently became the principal purchaser of the cheese products produced by Harvey Cheese.

In June 1975 Pauly concluded the financial future of Harvey Cheese did not warrant its continued operation and that the plant should be closed. He conveyed his plan to James Lewis, president of the National Bank of Harvey. Lewis requested, however, that he be given the opportunity, in the interests of the community, to attempt a reorganization with a continued operation of the plant. Pauly agreed to allow the continued operation of the plant but indicated a financial arrangement was necessary to solve the cash flow problem Harvey Cheese was experiencing.

In an effort to overcome the cash flow problem, Pauly and Lewis arrived at an arrangement whereby Harvey Cheese would receive faster payment for the cheese it shipped to Don Pauly Cheese. Prior to this agreement, Don Pauly Cheese generally issued payment for cheese purchased from Harvey Cheese only after it had received payment for the same cheese from its customers. As a result, approximately ten days would elapse between the time shipment was made from Harvey Cheese and payment was received by the same company. Under the new arrangement the National Bank of Harvey agreed to lend money to Don Pauly Cheese in exchange for promissory notes. Proceeds from the notes would be deposited directly, at the time of shipment, in the checking account of Harvey Cheese for payment of cheese shipped to Don Pauly Cheese. Don Pauly Cheese was to pay off the notes after it received payment for the cheese from its customers.

The first note issued under the new arrangement, in the amount of $25,000 was dated 5 June 1975 and had a due date of 1 August 1975. This note was paid for with a check dated 23 July 1975 carrying the notation, "REPAYMENT OF NOTE NO. 1." Another $25,000 promissory note dated 25 July 1975 and having a due date of 1 September 1975 was paid for by check dated 26 September 1975 carrying the following notation:

"principal 25,000.00 note

int. 388.36"

Both of the $25,000 notes were stamped "PAID" by the National Bank of Harvey and returned to Don Pauly Cheese.

The note in issue in this case, dated 27 June 1975, was in the amount of $30,000 and had a due date of 1 August 1975. The proceeds from this note as well as the two $25,000 notes were deposited directly into the Harvey Cheese checking account by the National Bank of Harvey at the direction of Pauly.

It should be noted at this point that the checking account maintained by Harvey Cheese with the National Bank of Harvey was the only relationship between the two businesses. Harvey Cheese was not indebted to the bank. The officers, shareholders and directors of the bank did not serve in a like capacity with Harvey Cheese at this time. Lewis, the bank president, testified the bank officers' involvement in the affairs of Harvey Cheese was only in the interest of the community rather than in any special interest of the bank.

On 26 July 1975 a check was drawn by Don Pauly Cheese on its account in Manitowoc, Wisconsin, in the amount of $30,000, naming the National Bank of Harvey as payee. This check, a copy of which appears below, was subsequently mailed to the National Bank of Harvey.

On 29 July 1975, while the $30,000 check was in transit and one day before it was received by the National Bank of Harvey, a conference call was conducted between two representatives of the bank, two representatives of the National Farmers Organization (NFO), and Pauly. The conference call was initiated by the NFO to discuss their accounts receivable with Harvey Cheese. The NFO was in urgent need of money to pay its producers for milk delivered to, but not paid for by Harvey Cheese.

At trial, the two representatives of the bank, and one of the representatives of NFO who participated in the conference call, testified that during the phone conversation Pauly stated, in effect, that a check was on its way to the National Bank of Harvey for payment of the $30,000 note but that the proceeds from the check should instead be deposited in the Harvey Cheese checking account for use in making payment to the NFO. Pauly testified that he did not authorize the deposit of the check in the Harvey Cheese bank account but rather stated, in effect, that a check was on its way to the bank in payment of the note, and that the bank could make its own loan to Harvey Cheese if it so desired.[1]

On 30 July 1975, the day following the conference call, the National Bank of Harvey received the $30,000 check and deposited the funds therefrom into the Harvey Cheese checking account. The bank thereafter requested payment on the $30,000 note, which request was denied by Don Pauly Cheese on the basis that payment, in the form of the $30,000 check, had been made. The suit before us followed.

The parties set forth the following issues on appeal:

(1) Was parol evidence varying the terms of the written notation contained on the check properly admitted;

(2) Are oral orders sufficient to vary the tender of a check.

---

**1.** In addition, Pauly testified he told the other parties to the call that he would immediately send out a $25,000 check to cover a shipment of cheese to be delivered by Harvey Cheese on 31 July 1975. This latter check was subsequently received by Harvey Cheese. Although this information has no particular bearing on our opinion, it is recited to provide the reader with complete information of the events surrounding the transaction in question.

Pauly contended a check is a contract in writing by which the drawer contracts with the payee that the bank, upon which the check is drawn, will pay to the payee or his order, the amount designated upon presentation. He asserted that the notation on the $30,000 check constituted a part of the written contract between the parties.

In support of his argument, Pauly cited the Texas decision of *Coastal Plains Development Corporation v. Tech-Con Corporation,* 531 S.W.2d 143 (Tex.App.1975) which stated:

"Tech-Con accepted the $6,300.00 check as written; it endorsed the check and retained the proceeds. Having accepted the benefits of such payment, it is deemed to have agreed to any conditions which are clearly shown by the draft to have constituted part of the agreement between the parties. Tech-Con was not authorized, without Coastal Plains' approval, to allocate such payment to any purpose other than that which may have been designated on the face of the draft. *Stetson-Preston Co. v. H. S. Dodson & Co.,* 103 S.W. 685 (Tex.Civ.App., 1907, no writ). If the written terms of the draft expressly designated the purpose for which the payment was made, such designation, upon acceptance of the draft, became an integral part of the parties' agreement. *Peavy-Moore Lumber Co., Inc. v. First Nat. Bank of Beaumont,* 133 Tex. 467, 128 S.W.2d 1158 (Tex.Com.App., 1939); 11 Am.Jur.2d, § 69, p. 93." 531 S.W.2d at 146.

See also, *Miller v. Draper,* 34 Ohio Misc. 11, 63 Ohio Op.2d 64, 295 N.E.2d 438 (1972); *Fleming v. Becker,* 14 Ariz.App. 347, 483 P.2d 579 (1971); *Aaronson v. McGowan,* 181 Miss. 642, 180 So. 738 (1938); Anderson, 2 Uniform Commercial Code § 3–104:12.

Pauly argued the notation on the check was a contract completely unambiguous on its face as to its terms, and therefore could not be altered by parol evidence.[2] Section 9–06–07, NDCC, states:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

In this instance the check was made out before, and was in transit at the time, the telephone discussion took place which may not make the above statute fully applicable. But, be that as it may, Pauly contended, in effect, the parol evidence rule prevents the admission of parol evidence to show the parties intended the payment of the check to be for purposes other than that expressly designated by the face of the instrument. Thus, extrinsic evidence that the parties intended the proceeds be applied for some other purpose would be inadmissible, and even if admitted, would constitute no basis for the trial court's judgment. *Routier v. Williams,* 52 N.D. 793, 204 N.W. 678 (1925); *National German-American Bank v. Lang,* 2 N.D. 66, 49 N.W. 414 (1891).

Pauly's argument, however, assumes the notation on the check is clear and unambiguous and constituted an integral part of the parties' contract. If a notation evidencing the purpose of payment or direction of funds is to be given conclusive effect, it must clearly appear that it was intended to constitute a part of the parties' contract and was not merely a notation made for purposes of convenience. *Coastal Plains Development Corporation v. Tech-*

---

**2.** In support of his argument that an unambiguous contract cannot be altered by parol evidence, Pauly cited § 9–09–06, NDCC, which states in pertinent part:

"*Alteration of written contract.*—A contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise."

The above statute is more appropriately referred to as a statute of frauds provision than a provision of the parol evidence rule. *Nelson v.*

*Glasoe,* 231 N.W.2d 766 (N.D.1975). Regardless of name, the above provision offers no support to Pauly's position. In this case, the trial court found an oral agreement existed between the parties altering the written agreement. This oral agreement was executed when the National Bank of Harvey deposited the check proceeds in the Harvey Cheese checking account and thus was within the specific exception of § 9–09–06, NDCC.

*Con Corporation, supra* ; 11 Am.Jur.2d *Bills and Notes* § 66. Thus, where the terms of the notation, as part of the instrument, are vague and uncertain as to whether or not the notation was intended to be part of the parties' contract at acceptance, testimony may be introduced to explain such terms or show the intent of the parties. *Smith v. Michael Kurtz Construction Co.,* 232 N.W.2d 35, 39 (1975); *Gilbert Manufacturing Co. v. Bryan,* 39 N.D. 13, 166 N.W. 805, 808 (1918).

■ This court has stated that the determination of whether or not a contract, or the terms of a contract, are clear and unambiguous is a question of law. *Grove v. Charbonneau Buick-Pontiac,* 240 N.W.2d 853 (N.D.1976); *Johnson v. Auran,* 214 N.W.2d 641 (N.D.1974). Consequently, the trial court was not required to make a specific finding of fact as to whether or not an ambiguity existed. The court's determination that an ambiguity existed is implied from the allowance and introduction of parol evidence. That determination is thus reviewed by this court as a question of law.

■ We disagree with Pauly's contention that the notation contained on the $30,000 check is clear and unambiguous as to whether or not it was intended to constitute part of the parties' contract. The notation on the check making reference to "payment on our note no 2" could have been either a condition of acceptance placed on it by Pauly, or merely a bookkeeping notation for purposes of convenience or identification. This is true even though the check contained the printed language: "THIS CHECK IS IN PAYMENT OF ITEMS AS PER STATEMENT FOLLOWING. ENDORSEMENT OF PAYEE WILL CONSTITUTE A RECEIPT IN FULL WHEN CHECK IS PAID." Such printed language is commonly contained on blank business checks and is not always intended, by either drawer or payee, to be made part of the parties' contract but is often used for the bookkeeping convenience of the drawer. To make such printed language clear and unambiguous as to whether or not it was intended to be part of the contract, the notation following the language must be

stated in a manner that the endorser is bound to understand the legal effect of his acceptance. The notation in this case does not carry a clear and certain message that acceptance will discharge the specified obligation, and it is not stated in such a manner that the endorser is bound to understand the legal effect of his acceptance. *Coastal Plains Development Corporation v. Tech-Con Corporation, supra; Jenkins v. Henry C. Beck Co.,* 449 S.W.2d 454 (Tex.Sup.1969). The printed words on the check, "statement following." may be construed to mean that a separate document will be furnished later rather than have reference to the notation, "Payment on our note no 2." The notation following the printed language and the printed language itself are not clear. Both are ambiguous.

■ Because the notation was not clear and unambiguous, the admission of parol evidence to show the parties did or did not intend it to be a part of their contract was not error. The determination of the intention of the parties as to whether or not the notation was a part of their contract was a factual determination to be made by the trial court which was decided contrary to the position of Don Pauly Cheese. *Tallackson Potato Company, Inc. v. MTK Potato Company,* 278 N.W.2d 417 (N.D.1979); *Metcalf v. Security International Ins. Co.,* 261 N.W.2d 795 (N.D.1978).

■ The conference call in this case took place while the check was in transit and prior to acceptance of the instrument by the National Bank of Harvey. The oral instructions became a part of this acceptance. The trier of fact was therefore required to make a finding of fact as to terms of the oral direction which this court will overturn only if "clearly erroneous." Rule 52(a), North Dakota Rules of Civil Procedure; *Tallackson Potato Company v. MTK Potato Company, supra.*

■ Prior to acceptance, the instrument and the funds represented thereby were the property of the drawer, Don Pauly Cheese, and were subject to his sole control. This is evidenced through § 41–04–30, NDCC (4–

403), which would have enabled the drawer to stop payment of the check had the National Bank of Harvey refused to comply with the drawer's oral direction.

■ In this case the trial court specifically found as a fact that the parties agreed the proceeds from the $30,000 check were to be placed in the Harvey Cheese checking account. Such a finding necessarily contradicts an intention on the part of the parties that the notation be made a part of their contract. We conclude the trial court properly admitted parol evidence to show whether or not the parties intended the notation to be a part of their contract. We also conclude substantial evidence exists in the record supporting the finding of fact that the parties agreed the proceeds from the check were to be deposited in a manner other than that indicated by the notation.

Pauly also argued that, as a matter of law, oral orders are insufficient to change the tender of a draft. He contended that a returned check marked "PAID" constitutes a valid receipt from the person endorsing it and receiving payment. He contended the law presumes that money given to another to whom a debt is owed is given in payment of the debt rather than for some other purpose, and that the returned check is presumptive evidence that its amount was paid to the payee on account of a debt shown to exist at the time it was paid. 60 Am.Jur.2d § 128. Pauly cited as authority § 41–03–76, NDCC (3–802), which provides in pertinent part:

> "*Effect of instrument on obligation for which it is given.*—1. Unless otherwise agreed where an instrument is taken for an underlying obligation
>
> a. the obligation is pro tanto discharged if a bank is drawer, maker or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor;"

The above-cited statute has no particular application to the issues presented in this case. The section addresses the status of the underlying obligation when a negotiable instrument is accepted for its satisfaction. It necessarily presumes the instrument was taken for the underlying obligation. In the case before us, the trial court specifically found the National Bank of Harvey did not take the $30,000 check as satisfaction for the 27 June note, but rather it was taken in accordance with the parties' oral agreement that the funds be deposited with Harvey Cheese.

■ Even if we accepted Pauly's contention that endorsement of the check by the bank was presumptive evidence that its amounts were paid in extinguishment of a debt, such presumptive evidence is not necessarily conclusive and thus is subject, as in this case, to rebuttal by showing the proceeds were accepted for a purpose other than the extinguishment of a debt.

In this case, no attempt was made to change the payee of the instrument. Rather an agreement was reached between the drawer and the payee under which the payee became, in effect, an agent to collect on the instrument and deposit the proceeds with the third party, Harvey Cheese. Pauly has cited no authority that such directions or agreements must be in writing and during trial evidence was introduced establishing a course of dealing between the parties that the bank had previously complied with oral directions by Pauly to deposit certain proceeds in the account of Harvey Cheese. Section 41–01–15, NDCC (1–205).

In *Laverty v. Hawkeye Security Insurance Co.*, 258 Iowa 717, 140 N.W.2d 83, 88 (Iowa 1966), the Iowa Supreme Court quoted with approval the following from 70 C.J.S. *Payment* § 55:

> "Where a debtor directs the manner in which his payment is to be applied, the creditor, if he accepts the payment, must apply it accordingly, the rule applying to payments by draft as well as to cash payments, and to directions to pay a part of the value received to another creditor."

We also find particularly relevant the following from an opinion of this court:

> "A debtor making a voluntary payment to a creditor to whom he owes several obligations has a right to direct to which debt or debts the payments shall be ap-

plied. *Harold v. Hill's Estate, et al.,* 41 N.D. 30, 169 N.W. 592; *Stebbins v. Lardner,* 2 S.D. 127, 48 N.W. 847; 48 C.J.S. 643; 21 R.C.L. 88. The money so paid is the property of the debtor, and he, therefore, has the right to determine how it shall be applied. In this case, the plaintiff was in possession of two obligations of the debtor, one it held as creditor, the other as collector. The debtor had the right to determine and direct upon which debt his payments should be applied. The bank had no right to apply the payments other than as directed and cannot be held liable for failure to apply upon the defendant's note payments which the debtor had directed to be applied upon his indebtedness to the plaintiff." *First National Bank of Mandan v. Larsson,* 67 N.D. 243, 271 N.W. 289 (1937).

In this case there was a duty upon the National Bank of Harvey when it accepted and retained the check sent to it by its debtor to apply the proceeds as directed by the debtor, regardless of whether or not it consented to the debtor's directions. Until payment was made and accepted the money was the property of the debtor, and being his property was subject to his direction, this was so even where the direction was in violation of a previous direction or even an agreement between the parties as to how the proceeds should be applied. Failure to follow such directions could have resulted in a liability on the part of the bank.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PAULSON and VANDE WALLE, JJ., concur.

PEDERSON, Justice, concurring specially.

I concur in the results and in most of what is stated to be the law, but I do not agree that the words on the face of Pauly's check are necessarily ambiguous. It would not alter the outcome, in my opinion, if the majority had concluded, as I have, that the words are clear and unambiguous.