COASTAL PLAINS DEVELOPMENT
CORPORATION et al., Appellants,

v.

TECH-CON CORPORATION, Appellee.

No. 16511.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Nov. 6, 1975.

Rehearing Denied Dec. 4, 1975.

Leland B. Kee, Angleton, for appellants.

Jon Mercer, Houston, for appellee.

EVANS, Justice.

Coastal Plains Development Corporation, the developer of a tract of land in Brazoria County, Texas, known as Cedar Lake Estates, entered into an agreement with Tech-Con Corporation dated September 4, 1970, under which Tech-Con was to construct certain roadways, a lake and other improvements on the land. By supplemental contract dated September 30, 1970 the parties agreed that immediately upon the funding of a pending loan transaction, Coastal Plains would pay the cash sum of $24,853.00 to Tech-Con for work completed to that date and would execute a six months note for $20,000.00, for the balance due for work completed, including extra work, to such date. This supplemental contract also provided that Tech-Con agreed to complete the shell surfacing of the roadways in accordance with the specifications of the original agreement and for this work it was to be paid from a "$10,000.00 balance of the available funds" upon submission of approved invoices as the work progressed. In connection with such future work Coastal Plains agreed to furnish materials and also

make "other financial arrangements suitable to" Tech-Con for the value of the difference between said sum of $10,000.00 and the original contract price.

Pursuant to the supplemental contract, Coastal Plains delivered its promissory note to Tech-Con in the principal amount of $20,-000.00, which was secured by certain lots in Cedar Lake Estates, a subdivision in Brazoria County, Texas. An escrow account was established in the First State Bank of Brazoria for the fund which was to be used for future work payments, and it appears that this account was funded with the total sum of $9,180.36.

Subsequent to the execution of the supplemental contract dated September 30, 1970, Coastal Plains issued three checks to Tech-Con drawn on an account established in the First State Bank of Brazoria. The first of these checks is dated November 3, 1970, for the amount of $6,300.00; the second is dated November 19, 1970, for the amount of $3,000.00, and the third is dated December 9, 1970, for the amount of $2,800.00. The $3,000.00 check was returned marked "insufficient funds." Both the $6,300.00 check and the $3,000.00 check bear notations making reference to: "Cedar Lakes Contract" but the $2,800.00 check does not bear such notation.

After execution of the September 30, 1970, supplemental contract, Tech-Con submitted only one invoice to Coastal Plains concerning the Cedar Lakes work. This invoice is dated November 24, 1970, and sets forth the following typed statement:

"To invoice you for road work completed on the referenced project as follows:

"Shell base 7200 LF @ $2.80 per LF x 50% complete          $10,080.00"

The basic contract between the parties provided that Tech-Con would be paid on the basis of $2.80 per lineal foot for roadways constructed with a sand-shell base. It also provided that Tech-Con would be paid within five days of receipt of each invoice, which invoices were to be submitted on the first and fifteenth days of each month for work completed to that date.

It is Tech-Con's contention that the $6,300.00 check was properly applied by it to an outstanding invoice which had been owed by Coastal Plains since August, 1970, for an entirely different project in Waller County, Texas. Tech-Con asserts that the sum of $2,800.00 represented by the December 9, 1970, check, is the only proper payment credit to be applied against said invoice and that after the $2,800.00 payment, there was a balance due and owing by Coastal Plains in the amount of $7,280.00, which it failed to pay. It is the contention of Coastal Plains that Tech-Con was actually overpaid with respect to said invoice; that the $6,300.00 check should have been applied to the Cedar Lake Estates work and, additionally, that the invoice should have reflected credits of $1,352.00 for shell which it furnished to the Cedar Lake Estates work and of $6,268.30 for an invoice due Parker Brothers & Co., Inc., which it had guaranteed and ultimately paid.

The supplemental contract dated September 30, 1970, provided that Tech-Con agreed "to no more than to continue work on the shell surfacing for so long as the payment schedule of the original agreement between the parties is met." Tech-Con contends that since it was not paid the balance which it claims was due on the $10,080.00 invoice within the time specified in the contract, it had the right to withdraw from the work.

The trial court found that the $6,300.00 payment was for work performed by Tech-Con with respect to the Waller County project and that the language on the face of the check indicating that it was applicable to the Cedar Lake work was "of no force and effect." It further found that the balance due Tech-Con from Coastal Plains for work completed on the Cedar Lake Estates project prior to December 15, 1970, was in the amount of $7,280.00 but that Coastal Plains was entitled to credits in the amount of $1,352.00 representing the value of the shell furnished to the project and in the amount of $6,268.00 for the

payments made by Coastal Plains to Parker Brothers. The court awarded Tech-Con judgment against Coastal Plains in the amount of $29,581.00 representing the principal and interest due on the $20,000.00 note through October 31, 1974, together with attorney's fees thereon, and also awarded judgment against Coastal Plains in the amount of $7,280.00 representing the balance due and owing to Tech-Con for work completed to December 15, 1970. It awarded Coastal Plains judgment against Tech-Con in the amount of $1,352.00 and $6,268.31 for the credits for which it found Coastal Plains entitled. It denied Tech-Con's claim for lost profits allegedly resulting from its inability to complete the work and also denied Coastal Plains recovery on its cross-action seeking damages for loss allegedly resulting from Tech-Con's failure to complete the work. Both parties have appealed, Tech-Con's appeal being limited to that part of the judgment refusing to award it recovery for alleged lost profits.

Under its first two points of error, Coastal Plains argues that the trial court erred in concluding that the notation "Cedar Lakes Contract—Coastal Plains Development" on the face of the $6,300.00 check was of "no force and effect" and in finding that such check represented payment for work performed on another project in Waller County, Texas.

The face of the check in question appears as follows:

Tech-Con accepted the $6,300.00 check as written; it endorsed the check and retained the proceeds. Having accepted the benefits of such payment, it is deemed to have agreed to any conditions which are clearly shown by the draft to have constituted part of the agreement between the parties. Tech-Con was not authorized, without Coastal Plains' approval, to allocate such payment to any purpose other than that which may have been designated on the face of the draft. *Stetson-Preston Co. v. H. S. Dodson & Co.*, 103 S.W. 685 (Tex. Civ.App., 1907, no writ). If the written terms of the draft expressly designated the purpose for which the payment was made, such designation, upon acceptance of the draft, became an integral part of the parties' agreement. *Peavy-Moore Lumber Co.,* *Inc. v. First Nat. Bank of Beaumont,* 133 Tex. 467, 128 S.W.2d 1158 (Tex.Com.App., 1939); 11 Am.Jur.2d, § 69, p. 93.

The trial court permitted Tech-Con to offer evidence tending to show that the $6,300.00 payment was made and accepted in payment of an outstanding invoice on another project in Waller County, Texas. Tech-Con's president, Jack Hensley, testified that the check was given in payment of an invoice for work done by Tech-Con for D & S Development, Inc. in August, 1970, on the Waller County project. (D & S Development Company was a corporation in which Charles Ducroz and LeRoy Schmalz were principals; the "D" stood for Ducroz and the "S" stood for Schmalz. Ducroz was also president of Coastal Plains, and Schmalz was its treasurer. Schmalz han-

dled the accounting for the two entities.) Hensley further testified that in discussing with Schmalz the fact that payment on the Waller County invoice was overdue, Schmalz stated: "I have some money in another account and I think I can make you a payment." Schmalz later advised Hensley that they were going to reimburse that account from proceeds of sales on the Waller project; that they would put the money back in that account. However, Hensley was subsequently told there was no money in that account. Ducroz testified that the $6,300.00 payment was for work done on the Cedar Lake project around November 3, 1970, and that it represented an "advance draw" against the November 24, 1970, invoice. He further testified he did not recall having received the $6,300.00 invoice on the Waller County project but assumed he had been invoiced at some time. He did not recall any payment having been made on that invoice. He said that at the time he signed the $6,300.00 check, he was not aware that there was an outstanding $6,300.00 invoice on the Waller County project. The $6,300.00 invoice on the Waller County project was stamped: "Paid November 6, 1970," which was approximately the same time the $6,300.00 check was negotiated through the bank. There was also testimony indicating that a copy of the Waller County invoice marked "Paid" had been transmitted to Coastal Plains on November 19, 1970, in response to a request of Ducroz. However, Ducroz testified he did not recall having received such transmittal.

■ Parol evidence is not admissible to show that the parties intended the payment of a check to be for purposes other than that expressly designated by the face of the writing. *Wyatt v. National Chemsearch Corp.,* 447 S.W.2d 715 (Tex.Civ.App.—Waco, 1969, no writ). If the draft for the $6,300.00 payment clearly showed that such payment was to be applied to the Cedar Lake Estates project, extrinsic evidence that the parties intended it to be applied to some other account, would be inadmissible, and even if admitted, would constitute no

basis for the trial court's judgment. *Ross & Sensibaugh v. McLelland,* 262 S.W.2d 205, 209 (Tex.Civ.App.—Fort Worth, 1953, writ ref. n. r. e.); *Cottingham v. Harrison,* 89 S.W.2d 255, 259 (Tex.Civ.App.—Eastland, 1935, writ dism.). However, if the notation evidencing the purpose of the payment is to be given conclusive effect, it must clearly appear that it was intended to constitute a part of the parties' contract and that it was not merely a notation made for the purpose of convenience. 11 Am.Jur.2d 90, Bills and Notes, § 66. The notation must carry a "clear and certain message" that acceptance will discharge the specified obligation and the condition must be stated in such manner that the endorser is "bound to understand" the legal effect of his acceptance. *Jenkins v. Henry C. Beck Co.,* 449 S.W.2d 454 (Tex.Sup.1969).

■ In our opinion the notation on the face of the $6,300.00 draft was not so clear and explicit that it was only susceptible of one interpretation. The notation on the draft making reference to the "Cedar Lakes Contract", could have meant, under the circumstances existing at the time the check was issued, either that the check was intended as payment on the account or as merely designating the account from which the item had been paid. In other words, the notation could have been made solely for the purpose of bookkeeping between related companies, as a convenient method of indexing, so that appropriate reimbursement to the Cedar Lakes account would be made at a later date. Whether there was a meeting of the minds of the parties on this question was a factual determination which the trial court was required to make, and which it decided contrary to Coastal Plains' position. *Jenkins v. Henry C. Beck Co., supra.*

In its third point, Coastal Plains asserts the trial court erred in finding that there was a balance due Tech-Con in the amount of $7,280.00 for work completed prior to December 15, 1970. It contends that the undisputed evidence shows the $10,080.00

invoice erroneously included the $1,352.00 item for shell which it furnished to the work and the $6,268.00 invoice of Parker Brothers which it had guaranteed and ultimately paid.

Tech-Con concedes these two items should have been properly offset in the final statement of accounts between the parties, but denies the $10,080.00 invoice was erroneous in not showing credit at that time. In our opinion the invoice should have reflected the $1,352.00 item as a credit inasmuch as the undisputed evidence shows that such material was previously furnished by Coastal Plains to the project and its value constituted an element of the total sum of $10,080.00. On the other hand, the $6,268.51 item was invoiced by Parker Brothers directly to Tech-Con and it was not until February, 1971, that Coastal Plains executed a note to Parker Brothers for such amount; nor was such obligation fully discharged by Coastal Plains until August, 1972. While Coastal Plains contends it had orally "guaranteed" payment to Parker Brothers, the evidence did not conclusively establish that Parker Brothers had agreed to look solely to Coastal Plains and not to Tech-Con prior to the time the invoice in question was submitted.

Applying the $1,352.00 credit and the $2,800.00 payment against the $10,080.00 invoice, there was a balance due on said invoice in the sum of $5,928.00. This is the identical amount sued for by Tech-Con in its first amended original petition as the balance due under the contract. The judgment of the trial court will be modified, as hereafter decreed, so as to reflect such credit of $1,352.00, as a reduction of the recovery awarded Tech-Con. The trial court also found that Coastal Plains made payment to Parker Brothers & Co., Inc., in the amount of $6,268.31 on August 7, 1972, for shell sold and delivered to Tech-Con and spread on the roadways in the Cedar Lake project. It awarded Coastal Plains recovery against Tech-Con in said amount, together with legal interest on said amount from and after August 7, 1972, the date of payment. In view of the fact that neither party complains of the trial court's judgment in effecting this manner of credit for such payment, its judgment in this respect will not be disturbed.

In view of our holding that the trial court did not err in finding a balance due under the contract for work completed prior to December 15, 1970, we find it unnecessary to consider Coastal Plains' fourth and fifth points which urge error on the part of the trial court in failing to find that Tech-Con had breached the contract and in failing to award it damages on its cross-action for breach of contract. We do, however, consider Tech-Con's cross-point that the trial court erred in failing to award it damages in the total sum of $76,976.00 representing its "lost profits" under the contract. Of this sum $5,524.00 represented its claim of lost profits in constructing the roadways and $70,652.00 its claim for lost profits in constructing the lake.

Viewing the contractual provisions of the supplemental contract in the light of the circumstances existing at the time such contract was made, the trial court could have concluded that the parties intended to terminate their respective obligations to complete all the work under the original contract if Coastal Plains should become financially unable to maintain payments for the work according to the payment schedule.

The trial court found:

"(10) By reason of the unavailability of sufficient funds, the parties agreed to extend the roadways surface as far as possible into the project with the materials and funds then available.

". . .

"(20) It was contemplated by the parties that the work would proceed only so long as the scheduled payments were made by Defendant to Plaintiff for the work consummated."

Tech-Con has not contested the factual sufficiency of these findings and they are

not inconsistent with the stipulations contained in the supplemental agreement. Although there is language in the supplemental contract indicating that the agreement was not intended to "reduce or replace the liability of" Coastal Plains to pay Tech-Con for the specified work to be performed by it under the original contract, the trial court evidently concluded that under the provisions of the supplemental contract, Tech-Con had the obligation to proceed with the work "only so long as the schedule payments were made . . . for the work consummated," and Coastal Plains had only the obligation to pay for the work which had been done. Whether or not the parties intended by the supplemental contract to alter their respective obligations under the original contract was for the trial court to determine from their situation at that time and from all attending facts and circumstances reflecting upon their intent. *Alabama Oil & Pipeline Co. v. Sun Co.*, 99 Tex. 606, 92 S.W. 253 (1906); *Garrett v. Danner*, 146 S.W. 678 (Tex.Civ.App.—Amarillo, 1912, no writ); see also *Ford Motor Co. v. Davis Brothers, Inc.*, 369 S.W.2d 664 (Tex.Civ.App. —Eastland, 1963, no writ).

The trial court's judgment is reformed to the extent that the award in favor of Tech-Con Corporation against Coastal Plains Development Corporation for the balance due and owing Tech-Con for work completed prior to December 15, 1970, is reduced from the amount of $7,280.00 to the total sum of $5,928.00, and in accordance with such reduction the award to Coastal Plains Development Corporation against Tech-Con Corporation in the amount of $1,352.00, representing the value of the shell furnished by Coastal Plains to the work, is ordered deleted from the judgment. In all other respects the judgment of the trial court is affirmed.

Affirmed as modified.