TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00698-CV






Rodney Elkins, Appellant



v.



The State of Texas, Appellee






FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY


NO. 230,772, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING






 Rodney Elkins appeals the trial court's judgment ordering him to pay to the State
of Texas $6322.74 for defaulted student loans as well as $6000 in attorney's fees and an additional
$2500 in attorney's fees in the event of an appeal. We will affirm the judgment of the trial court.


BACKGROUND



 Between 1971 and 1979, Rodney Elkins borrowed $6165 to help pay for his
undergraduate studies and law school. In borrowing this money, Elkins signed seven notes, each
payable to the Texas Opportunity Plan Fund. After completing his studies, but before he was
scheduled to begin repaying the loans, Elkins received a "Disclosure of Finance Charges"
("Disclosure Statement") indicating the terms of repayment on the loans. This Disclosure
Statement is referenced in the original notes and is intended to inform the student of the terms of 
repayment and to create a payment schedule for the student to follow when repaying his loans
after graduation. The terms of the Disclosure Statement include the monthly payment amount;
the length of the repayment period, including beginning and ending dates for repayment; the
procedures used by the Coordinating Board of the Texas College & University System ("Board") (1)
when applying payments to the student's account; and additional terms of repayment including
explanation of the method for calculating interest and late charges. The Disclosure Statement sent
to Elkins consolidated the seven notes signed by him into a single account; thus, instead of
requiring seven separate payments of at least $30 per month, the Disclosure Statement required
only a single payment each month of $75. The Disclosure Statement explained that this payment
would be allocated first to outstanding interest, then to outstanding insurance charges, late
charges, court costs or other collection charges, and finally to the outstanding principal amount
of the oldest note.

 Elkins was asked to sign and return the Disclosure Statement; however, he failed
to do so. Still, beginning in June 1980, Elkins began paying $75 per month as required by the
Disclosure Statement. On October 5, 1980, Elkins wrote a letter to the Board stating that his first
note of November 5, 1971, had been paid in full and requesting the cancellation and return of this
note. Even though the Board refused to comply with this request, Elkins continued payment on
the account in accordance with the Disclosure Statement. Elkins continued making these
payments, although at times not paying for a month or longer and then making up for the lapse
in a subsequent month, until October 1985, at which time he ceased making further payments.

 At some point, Elkins began making notations on the backs of his checks
concerning the manner in which he wished his payments to be allocated among the notes. Elkins
testified that he had always included these notations; however, he could not produce all of the
checks, including the first five checks, to support this assertion. The Board testified that due to
the method in which these checks were processed, the backs of the checks were not manually
endorsed. Instead, this was done by machine. Because at the time of the endorsement only the
fronts of the checks were copied onto microfilm, the Board did not retain copies of the backs of
the checks it received. The Board also testified that even after receiving Elkins's letter evidencing
his desire to have the payments allocated in a specific manner, they could not and would not do
so because the notes had been consolidated into a single account that could not be divided in the
manner he requested. Elkins sent further letters requesting that the notes be canceled and returned
to him because he considered them paid in full, but the Board refused to comply with his requests,
insisting that pursuant to the Disclosure Statement, the payments were to be applied to a single
account rather than the seven separate and distinct notes.

 The State has filed three successive suits to recover on this account. Each suit has
been filed in Travis County, and Elkins has moved to transfer venue in each suit to Dallas County. 
While the first motion to transfer venue was pending, the case was dismissed for want of
prosecution. (2) The State nevertheless filed suit a second time, and Elkins's motion to transfer
venue to Dallas County in that suit was granted. After the case was transferred to Dallas County,
it was dismissed for want of jurisdiction upon motion by Elkins. Upon a third filing by the State,
Elkins filed a third motion to transfer venue. This motion to transfer was denied by the Travis
County trial court, and a non-jury trial followed. The trial court ordered Elkins to pay the
outstanding balance on his account plus interest, $6000 in attorney's fees, and $2500 in attorney's
fees for an appeal, should one become necessary.

 Elkins appeals the trial court's judgment, asserting ten points of error. He contends
that the Travis County Court at Law was not the proper venue for this trial, the State was not a
proper party, and the action was barred by limitations and laches. Elkins also argues that the
State failed to apply payments as directed by him and thereby breached the contract between the
State and himself. Elkins further contends that the trial court erred in denying him a jury trial,
in admitting parol and extraneous evidence to alter the terms of the notes, in awarding attorney's
fees to the State, in awarding post-judgment interest, in awarding discovery sanctions, in taxing
costs for the State, and in failing to make and file timely findings of fact and conclusions of law. 
Finally, Elkins argues that the trial court's findings of fact are not supported by legally and
factually sufficient evidence.

DISCUSSION


Disclosure Statement

 In point of error one, Elkins contends that he never signed the Disclosure Statement
and therefore is not bound by the terms of that document. Instead, Elkins argues that the
notations he included on the backs of the checks constituted a modification of the contract and that
by accepting and endorsing the checks, the State (3) was bound to apply those payments as Elkins
directed. In failing to do so, Elkins contends that the State breached the contract. Elkins also
argues, in point of error four, that all parts of the Disclosure Statement other than the repayment
schedule itself constituted parol and extraneous evidence that should not have been admitted by
the trial court.

 Although Elkins failed to sign and return the Disclosure Statement, there was
evidence presented at trial that Elkins began repaying his loans at a rate of $75 per month, the
amount required by the Disclosure Statement. This indicated to the Board that Elkins was
agreeing to the Disclosure Statement by performance. There was also evidence that for the first
five months during which Elkins submitted payments, the State did not know that Elkins was
attempting to modify the agreement or that he did not agree to the terms of the Disclosure
Statement. In this regard, no letters were sent to the State explaining Elkins's position until
October 1980, and Elkins could not furnish the first five checks on which he made the alleged
notations. Further, there was evidence that because of the procedures used in processing checks,
even if Elkins had begun placing notations on the backs of the checks in June 1980, the Board
would not have been aware of these notations. The trial court found in its findings of fact that
Elkins:


accepted the [State's] offer to modify the contracts when he began performing in
accordance with the terms of the offer, and accepted the benefits of the offer to
modify, sending the [State] one payment per month in the amount of $75, rather
than sending one payment on each of the seven notes.



 As it is left to the trier of fact to weigh the credibility of witnesses and evidence,
it was within the discretion of the trial court both to discount the testimony by Elkins and to
believe that Elkins agreed--by his performance during these five months--to abide by the terms of
the Disclosure Statement. Further, the trial court could properly conclude from the evidence that
the failure of the Board to notice any notations on the backs of the checks was reasonable because
the method of notation was not so clear, conspicuous, and unequivocal that it would put the State
on notice that acceptance of the check would constitute a knowing acceptance of Elkins's attempt
to modify the contract. See Coastal Plains Dev. Corp. v. Tech-Con Corp., 531 S.W.2d 143, 146-47 (Tex. Civ. App.--Houston [1st Dist.] 1975, writ ref'd n.r.e.) (holding that to be given
conclusive effect, notation must be clearly shown to constitute part of agreement between parties
and carry "clear and certain message" concerning its legal effect). Having found that Elkins
agreed to abide by the terms of the Disclosure Statement, the trial court could easily find that the
Disclosure Statement was not parol or extraneous evidence and that Elkins breached his contract
with the State by discontinuing his payments in 1985. Thus, we overrule points of error one and
four.


Venue

 Elkins contends in point of error two that the trial court erred in denying his motion
to change venue. The trial court found that the mandatory venue provision of the Education Code
was applicable in this case and that, based upon this provision, venue in Travis County was
proper. Section 52.39 of the Education Code provides that in suits involving student loans a 
"[s]uit for the remaining sum shall be instituted by the attorney general, or any county or district
attorney acting for him, in the county of the person's residence, the county in which is located the
institution at which the person was last enrolled, or in Travis County . . . ." Tex. Educ. Code
Ann. § 52.39 (West 1996). Elkins argues that this section is permissive rather than mandatory. 
He challenges the trial court's venue ruling, arguing that mandatory venue lies in Dallas County,
rather than Travis County, because he resides in Dallas. See Tex. Civ. Prac. & Rem. Code Ann.
§ 15.035(b) (West 1986); Tex. Bus. & Com. Code Ann. § 17.46(b)(22) (West Supp. 2000). This
Court rejected a similar argument in Ramirez v. State wherein we held, "[T]he legislature . . .
made venue in section 52.39 mandatory by setting out those counties in which, in case of default,
the Attorney General 'shall' bring suit." Ramirez v. State, 550 S.W.2d 121, 124-25 (Tex. Civ.
App.--Austin 1977, no writ). Elkins also argues that a statute creating mandatory venue in Travis
County would be an unconstitutional denial of due process and equal protection. This too was
rejected in Ramirez where this Court found that section 52.39 is constitutional and provides ample
opportunity for parties to be heard. See id. at 125.

 Further, Elkins argues that the two earlier lawsuits had already established venue
in Dallas County and that the trial court erred in overruling his motion to transfer in the
underlying cause. We reject this argument. While the first lawsuit ended in a nonsuit, the
procedural posture at the time of dismissal was insufficient to confer venue as a matter of law in
Dallas County. See GeoChem Tech. Corp. v. Verseckes, 962 S.W.2d 541, 543 (Tex. 1998). The
second lawsuit ended in a dismissal of the suit for want of jurisdiction in Dallas County on
Elkins's own motion. The trial court could properly consider that Elkins had successfully gotten
this case transferred to Dallas County only to have it dismissed on his own motion. See
Westchester Fire Ins. Co. v. Lowe, 888 S.W.2d 243, 251-52 (Tex. App.--Beaumont 1994, no
writ). We overrule Elkins's second point of error.


Jury Trial

 Elkins argues in his third point of error that the trial court erred in denying him a
jury trial. Elkins contends that the Travis County local rule upon which the trial court relied in
denying him a jury trial is inconsistent with the Texas procedural rule governing jury trial
requests. For this reason, he argues that the trial court's reliance on the local rule constituted
reversible error. The Travis County Courts at Law Local Rules of Procedure and Rules of
Decorum provide that "a case may not be set for jury trial if a non-jury setting was obtained prior
to payment of the jury fee, except by the written agreement of the parties or ordered by a judge." 
Travis Cty. Loc. R. 2.2. Because this rule allows a party to set a case for jury trial after a non-jury setting has been obtained by either written agreement of the parties or order of the judge, we
find that it is not inconsistent with the State rule providing that 


no jury trial shall be had in any civil suit, unless a written request for a jury trial
is filed with the clerk of the court a reasonable time before the date set for trial of
the cause on the non-jury docket, but not less than thirty days in advance.



Tex. R. Civ. P. 216(a) (emphasis added).

 While the non-jury setting in this case was scheduled on July 14, 1998, Elkins did
not request a jury trial or pay the required fee until August 7, 1998. Elkins failed to meet his
procedural responsibilities by failing to comply with the local rule requiring him to either request
a jury trial before a non-jury setting was scheduled or approach either the State or the trial court
to change the setting from non-jury to jury. For this reason, we overrule Elkins's third point of
error.


Attorney's Fees

 In his fifth point of error, Elkins contends that the trial court erred in awarding
attorney's fees to the State. The decision to award attorney's fees is one within the discretion of
the trial court. See Gonzalez v. Nielson, 770 S.W.2d 99, 102 (Tex. App.--Corpus Christi 1989,
writ denied). A trial court may be reversed for abusing its discretion only if the court acted in
an unreasonable, arbitrary manner, or acted without reference to any guiding rules and principles. 
See Downer v. Aquamarine Opers., Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). Factors to be
considered in determining the reasonableness of attorney's fees include the time and labor
involved, the nature and complexity of the case, the value of the interest involved, the extent of
the responsibilities assumed by the attorney, and the benefits resulting to the client from the
attorney's services. See Alexander v. Cooper, 843 S.W.2d 644, 647 (Tex. App.--Corpus Christi
1992, no writ).

 Ample evidence exists in the record upon which the trial court could rely in
awarding attorney's fees. Counsel for the State testified as to the numerous issues raised in this
case; the amount of time she spent on researching those issues, drafting documents, preparing for
court, and making court appearances; and the amount of time she estimated would be expended
if the case were appealed. She also testified as to a reasonable rate to use in assessing attorney's
fees based upon her experience regarding the fees usually awarded in cases in which the State of
Texas is a party and the fees charged by other attorneys with comparable experience. We find
that the trial court did not abuse its discretion in awarding $6000 as a reasonable amount of
attorney's fees for the work done by the Office of the Attorney General in this case prior to
judgment and $2500 as a reasonable amount of attorney's fees for the work that would be
necessary upon appeal. Therefore, we overrule point of error five.


Post-Judgment Interest

 Elkins contends in point of error six that the trial court erred in its award of post-judgment interest because the award fails to state a single rate of interest, purports to rely on a
statute repealed a year earlier, and is vague, ambiguous, and could lead to multiple interpretations. 
Taking each of these arguments in turn, we find that none constitutes reversible error. The
section of the Finance Code governing post-judgment interest awards provides that "a money
judgment of a court of this state must state the post-judgment interest rate applicable to that
judgment." Tex. Fin. Code Ann. § 304.001 (West Supp. 2000). This interest rate need not be
a single, "weighted interest rate" but may consist of the several different contract rates of interest
on the various notes agreed to and signed by Elkins. See id. § 1.002 (West 1998); Tex. Gov't.
Code Ann. § 311.012(b) (West 1998). Although the judgment cites to the predecessor of section
304.001 of the Finance Code, a statute that has since been repealed, this error was harmless
because the legislature made it clear that the codification was non-substantive. See Tex. Fin.
Code Ann. §1.001 (West 1998). Because the three interest rates now charged to Elkins were
specifically set forth in the notes he signed, the post-judgment interest award incorporating these
three interest rates is not ambiguous or vague. We overrule Elkins's sixth point of error.


Court Costs

 In point of error eight, Elkins argues that the trial court erred in taxing costs for
the State because the State failed to comply with the requirement for taxing and the judgment fails
to set forth the amount of costs taxed. However, this argument is premised on an interpretation
of section 31.007 of the Civil Practice and Remedies Code that ignores well established practices
and procedures in Texas courts. (4) The clerk of the court maintains records of the costs listed in
section 31.007(b)(1) and (2) and is able to certify those costs upon preparation of a writ of
execution. Thus, when the prevailing party seeks recovery of only those costs that have been
recorded by the clerk, these records are sufficiently specific and available to justify recovery
because they are on record in the court clerk's office. We overrule Elkins's eighth point of error.


Findings of Fact and Conclusions of Law

 In point of error nine, Elkins argues that the trial court erred in failing to make and
file timely findings of fact and conclusions of law. Although failure by the trial court to enter
findings of fact and conclusions of law when timely requested may constitute reversible error, the
proper remedy is to abate the appeal and direct the trial court to correct its error pursuant to Texas
Rule of Appellate Procedure 44.4. See Cherne Indus., Inc. v. Magallanes, 763 S.W.2d 768, 773
(Tex. 1989); Zieba v. Martin, 928 S.W.2d 782, 786 (Tex. App.--Houston [14th Dist.] 1996, no
writ); Tex. R. App. P. 44.4. This Court followed this procedure by abating this appeal until
findings of fact and conclusions of law were filed by the trial court. This filing remedied any
error by the trial court. Thus, we overrule point of error nine.

 In point of error ten, Elkins argues that the trial court's findings of fact and
conclusions of law are not supported by legally and factually sufficient evidence. We have
reviewed the evidence pertinent to this point and find that it is without merit. We overrule
Elkins's tenth point of error.


Discovery Sanctions

 Elkins contends in point of error seven that the trial court erred in awarding
discovery sanctions. We review the issuance of discovery sanctions for an abuse of discretion. 
See Nunez v. Caldarola, 2 S.W.3d 755, 760 (Tex. App.--Corpus Christi 1999, pet. filed). The
trial court ordered Elkins to pay $375 for the attorney's fees that the State incurred in obtaining
a discovery order compelling the production of certain documents. The Texas Rules of Civil
Procedure provide for an award of expenses, including attorney's fees, upon a successful motion
for sanctions or an order compelling discovery. See Tex. R. Civ. P. 215.1(d). These expenses
are to be paid by the "party or deponent whose conduct necessitated the motion or the party or
attorney advising such conduct or both of them." Id. Based on this provision, we conclude that
the trial court's award of attorney's fees in the order granting the State's amended motion to
compel production of documents was not an abuse of discretion. We therefore overrule this point
of error.


CONCLUSION


 Having overruled all of Elkins's points of error, we affirm the judgment of the trial
court.



 


 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: July 13, 2000

Do Not Publish

1. The Coordinating Board of the Texas College & University System has since been renamed
the Texas Higher Education Coordinating Board. See Act of May 24, 1993, 73d Leg., R.S., ch.
571, § 2, 1993 Tex. Gen Laws 2146 (codified at Tex. Educ. Code Ann. § 52.01 (West 1996)).
2. Although unclear from this record, the first suit had been dormant due to a bankruptcy stay. 
This suit was finally dismissed as a result of the State's motion for nonsuit.
3. In a separate point, Elkins argues that the State is not a proper party in this case because the
State has no interest in the notes in question. He argues that there has been no assignment of any
right to the State and, even if there were, the State no longer has any interest because the notes
were endorsed over to the federal government, as insurer of the notes. There was evidence
presented at trial that the Board acts as an arm of the State in providing loans to Texas students
from funds provided for by bonds sold per authorization by the State legislature. See Tex. Const.
art. III, § 50b (1965, repealed 1999); Tex. Educ. Code Ann. § 52.32(d) (West 1996). There was
also evidence at trial that the notes have not been endorsed over to the federal government but are
still held and owned by the State. For these reasons, we conclude that the State has an interest
in recouping the money it has provided and is therefore a proper party to this suit. Elkins also
argues that this action is barred by limitations and laches; however, limitations and laches do not
apply because this cause of action has been brought by the State. See Tex. Civ. Prac. & Rem.
Code Ann. § 16.061 (West Supp. 2000); Waller v. Sanchez, 618 S.W.2d 407, 409 (Tex. Civ.
App.--Corpus Christi 1981, no writ). 
4. To the extent that this interpretation is endorsed by the El Paso court of appeals in Varner
v. Howe, 860 S.W.2d 458, 466 (Tex. App.--El Paso 1993, no writ), we decline to follow that
decision.


e Indus., Inc. v. Magallanes, 763 S.W.2d 768, 773
(Tex. 1989); Zieba v. Martin, 928 S.W.2d 782, 786 (Tex. App.--Houston [14th Dist.] 1996, no
writ); Tex. R. App. P. 44.4. This Court followed this procedure by abating this appeal until
findings of fact and conclusions of law were filed by the trial court. This filing remedied any
error by the trial court. Thus, we overrule point of error nine.

 In point of error ten, Elkins argues that the trial court's findings of fact and
conclusions of law are not supported by legally and factually sufficient evidence. We have
reviewed the evidence pertinent to this point and find that it is without merit. We overrule
Elkins's tenth point of error.


Discovery Sanctions

 Elkins contends in point of error seven that the trial court erred in awarding
discovery sanctions. We review the issuance of discovery sanctions for an abuse of discretion. 
See Nunez v. Caldarola, 2 S.W.3d 755, 760 (Tex. App.--Corpus Christi 1999, pet. filed). The
trial court ordered Elkins to pay $375 for the attorney's fees that the State incurred in obtaining
a discovery order compelling the production of certain documents. The Texas Rules of Civil
Procedure provide for an award of expenses, including attorney's fees, upon a successful motion
for sanctions or an order compelling discovery. See Tex. R. Civ. P. 215.1(d). These expenses
are to be paid by the "party or deponent whose conduct necessitated the motion or the party or
attorney advising such conduct or both of them." Id. Based on this provision, we conclude that
the trial court's award of attorney's fees in the order granting the State's amended motion to
compel production of documents was not an abuse of discretion. We therefore overrule this point
of error.


CONCLUSION


 Having overruled all of Elkins's points of error, we affirm the judgment of the trial
court.



 


 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: July 13, 2000

Do Not Publish

1. The Coordinating Board of the Texas College & University System has since been renamed
the Texas Higher Education Coordinating Board. See Act of May 24, 1993, 73d Leg., R.S., ch.
571, § 2, 1993 Tex. Gen Laws 2146 (codified at Tex. Educ. Code Ann. § 52.01 (West 1996)).
2. Although unclear from this record, the first suit had been dormant due to a bankruptcy stay. 
This suit was finally dismissed as a result of the State's motion for nonsuit.
3. In a separate point, Elkins argues that the State is not a proper party in this case because the
State has no interest in the notes in question. He argues that there has been no assignment of any
right to the State and, even if there were, the State no longer has any interest because the notes
were endorsed over to the federal government, as insurer of the notes. There was evidence
presented at trial that the Board acts as an arm of the State in providing loans to Texas students
from funds provided f