# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-20430

United States Court of Appeals
Fifth Circuit

**FILED**

October 29, 2014

Lyle W. Cayce
Clerk

URETEK (USA), INCORPORATED,

Plaintiff – Appellant,

v.

URETEKNOLOGIA DE MEXICO S.A. DE C.V.,

Defendant – Appellee.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:11-CV-3060

Before DAVIS, DeMOSS, and ELROD, Circuit Judges.

PER CURIAM:*

After a jury verdict against Uretek USA, Inc. ("Uretek") in this breach of contract dispute, the district court entered judgment for Ureteknologia de Mexico S.A. de C.V. ("UdeM") and awarded it $211,609.88 in attorney's fees. On appeal, Uretek contends that the district court's judgment is not supported by sufficient evidence and that the attorney's fee award amounted to an abuse of discretion. Because ample evidence supported the verdict and judgment,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and because the district court acted well within its discretion in awarding attorney's fees to UdeM, we AFFIRM.

## I.

Uretek, an Iowa corporation with its principal place of business in Texas, has developed a proprietary polyurethane foam and "deep injection" process to repair pavement and foundations. In a sublicense agreement executed in March 2003, Uretek granted UdeM the right to use its products and processes in Mexico. This agreement required UdeM to annually purchase from Uretek, at a minimum, 100,000 pounds of Uretek's polyurethane. It also required UdeM to pay a royalty whenever it used Uretek's deep injection process and prohibited UdeM from purchasing Uretek products from sources other than Uretek.

In December 2009 and January 2010, Uretek provided labor and materials to UdeM as a subcontractor to UdeM's "Metro Project" in Mexico. Uretek sent invoices to UdeM, but UdeM disputed the charges and refused to pay. Uretek's chairman and CEO, Brent J. Barron, and UdeM's president, Francisco Alvarez, met in May 2010 in an attempt to resolve the dispute. At this meeting, Barron and Alvarez executed an agreement that modified the sublicense agreement and declared that UdeM had satisfied its polyurethane purchase requirement through May 2010. Uretek also accepted and deposited a check for $175,023.34 to pay four invoices.

Alvarez again met with Barron in June 2010, presenting to him a document entitled "First Amendment to Sublicense Agreement." The amendment recited that it was for "$10.00 and other good and valuable consideration." Barron and Alvarez initialed the document in several places. Barron also dated and initialed a release, which contained an identical consideration recitation. During this meeting, Uretek accepted four checks

2

from UdeM.  The amounts and memo lines of these checks were as follows: (1) $10.00 "As per First Amendment to Sublicense Agreement between [Uretek] and [UdeM]"; (2) $76,950.89 for "Full payment on Technical Assistance"; (3) $225,471.05 for "Full payment on Royalties"; and (4) $10.00 for "Full Release [Uretek] to [UdeM]."   Barron accepted the checks by signing and dating photocopies, and he placed a "paid" stamp on the invoices that accompanied the second and third checks.  Uretek deposited all four of the checks.  Notably, Uretek employees deposited the amendment's $10 consideration payment at Barron's specific direction.

The June 2010 amendment modified the sublicense agreement in several respects.  It eliminated the royalty that UdeM owed Uretek for the use of its deep injection process.  In addition, while the sublicense agreement originally provided that UdeM must purchase all its polyurethane requirements—and any Uretek products—directly from Uretek, the amendment eliminated these provisions, requiring only that Uretek make its polyurethane available to UdeM at a specified purchase price.  The amendment also eliminated UdeM's minimum purchase requirement and deleted a provision that had empowered Uretek to terminate the sublicense agreement if UdeM failed to purchase polyurethane from Uretek.  Finally, the amendment added a new paragraph to the agreement, providing that UdeM would owe royalties to Uretek on UdeM's purchases of any materials that were subject to Uretek's patent.  These royalties were to be paid "at the rate of fifty (50) percent of the lesser of (a) the actual cost of such materials only as purchased by [UdeM] from URETEK, or (b) the actual cost of such materials only as purchased by URETEK for, and re-sold and actually delivered by URETEK to, [UdeM]."

In October 2010, UdeM purchased Uretek polyurethane from another company.  In December 2010, Uretek accepted, endorsed, and deposited two

more checks from UdeM. These checks—one for $25,230.00 and the other for $18,021.00—stated in the memo lines that they were "[p]ayment on behalf of [UdeM] DI Royalties paid in full as per First Amendment for polymers delivered by" the company from which UdeM had bought the polyurethane. However, Uretek subsequently refused to sell any more polyurethane to UdeM and terminated the sublicense agreement.

Uretek brought suit against UdeM in Texas state court, seeking a declaration that the June 2010 amendment never became effective. Uretek also sought damages for UdeM's alleged breaches of the sublicense agreement and attorney's fees. UdeM counterclaimed, seeking a declaration that the sublicense agreement, as modified by the May 2010 agreement and June 2010 amendment, was valid and enforceable; the June 2010 amendment was valid and enforceable; Uretek's attempted termination was ineffective; and the June 2010 release was valid and enforceable. UdeM also sought attorney's fees and specific performance of the sublicense agreement.

The district court granted summary judgment to UdeM on the issue of whether the amendment was supported by consideration. The case then proceeded to trial. The jury found that UdeM did not fraudulently procure Barron's initials on the amendment or release, that in June 2010 Uretek did not agree to the amendment but did agree to the release, and that Uretek later ratified both the amendment and the release. The district court then entered a judgment declaring that the sublicense agreement, as modified by the May 2010 agreement and the June 2010 amendment, was valid; that Uretek's termination constituted a breach of the sublicense agreement; and that the June 2010 release was valid. The district court denied, however, UdeM's specific performance claims. The district court then awarded UdeM

$211,609.88 in attorney's fees.  After the district court denied its motion for new trial, Uretek initiated this appeal.

## II.

We review a jury's verdict for sufficiency of the evidence.  "We must view the evidence in the light most favorable to upholding the jury's verdict and may only reverse if the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary conclusion."  *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 369 (5th Cir. 1998) (internal quotation marks omitted).

"The district court's award of attorney's fees under Chapter 38 of the Texas Civil Practice & Remedies Code is . . . reviewed for abuse of discretion."  *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 341 (5th Cir. 2008).  Supporting factual findings, however, are reviewed for clear error.  *Id.*

## III.

The jury found that Uretek, although it did not execute the June 2010 amendment to the sublicense agreement, later ratified it.  "Ratification is the adoption or confirmation, by a party with actual knowledge of all material facts, of a prior act that did not then legally bind that party and which that party had a right to repudiate."  *PanAmerican Operating, Inc. v. Maud Smith Estate*, 409 S.W.3d 168, 176 (Tex. App.—El Paso 2013, pet. denied).  "A party ratifies a contract by acting under it, performing under it, or affirmatively acknowledging it."  *Id.*  "Any act inconsistent with an intent to avoid a contract has the effect of ratifying the contract."  *Barker v. Roelke*, 105 S.W.3d 75, 85 (Tex. App.—Eastland 2003, pet. denied).  In particular, a party can ratify an agreement by cashing a check.  *Texas Emp'rs Ins. Ass'n v. Bottoms*, 200 S.W.2d 418, 420–21 (Tex. Civ. App.—Fort Worth 1947, no writ).

Uretek asserts that its cashing of the two December 2010 checks and the June 2010 check for $10.00 "as per" the amendment could not support the jury's ratification finding.  We address each of Uretek's contentions in turn.

We first address the December 2010 checks.  Uretek argues that its acceptance of payments for "DI [r]oyalties" in connection with purchases of polyurethane from another company could not constitute ratification because the June 2010 amendment would abolish deep injection royalties and, on Uretek's reading, would not permit UdeM to purchase Uretek polyurethane from other companies.  Uretek's argument misrepresents the June 2010 amendment and sidesteps an ambiguity in the checks' memo lines.

To begin, Uretek observes that although paragraph 16 of the June 2010 amendment deleted the provisions of the sublicense agreement that prohibited UdeM from purchasing Uretek polyurethane from others, it left "unaltered" the provision that obligated UdeM to purchase all its Uretek polyurethane requirements from Uretek.  It is true that paragraph 16 of the amendment did not alter the requirements provision.  In making this observation, however, Uretek omits to mention the effect of the amendment's preceding paragraph.  In particular, paragraph 15 of the amendment modified the requirements provision so that UdeM merely had the *option* (rather than the obligation) of purchasing Uretek polyurethane directly from Uretek.  Paragraphs 15 and 16 of the amendment, operating together, unambiguously relieved UdeM of its obligation to purchase its Uretek polyurethane requirements exclusively from Uretek.  Furthermore, while Uretek points to paragraph 33 of the amendment and the strike-out of the phrase "parties other than [Uretek]," that paragraph dealt only with the computation of royalties.  Under the edited version of paragraph 33, regardless of the source from which UdeM purchased Uretek products, the royalties that it owed would depend on the actual cost of the

products had Uretek sold them to UdeM.  This calculation-of-royalties provision, contrary to Uretek's assertion, did not require UdeM to purchase its polyurethane requirements exclusively from Uretek.

Finally, Uretek notes that the June 2010 amendment, in paragraph 7, deleted a provision in the sublicense agreement that required UdeM to pay Uretek a royalty for any use of Uretek's deep injection process.  As Uretek argues, because the memo lines of the December 2010 checks said they were for "DI [r]oyalties," the jury could have concluded that they were inconsistent with the June 2010 amendment.  This conclusion was not, however, the only reasonable one that the jury could have drawn.  The entire memo line on the checks read: "Payment on behalf of [UdeM] DI Royalties paid in full as per First Amendment *for polymers delivered by [another company]*."  The amendment had added a new paragraph to the agreement, providing that UdeM would owe royalties to Uretek on UdeM's purchases of any Uretek products.  The jury was entitled to conclude that the December 2010 checks represented royalty payments for UdeM's purchase of Uretek products, rather than its use of Uretek's deep injection process.  Indeed, Alvarez testified to that effect and explained that he included the "DI [r]oyalties" phrase because "[t]hat's the way Mr. Barron wanted to call it."  This factual dispute was properly left to the jury.

In sum, sufficient evidence showed that the two December 2010 checks referenced, and were consistent with, the June 2010 amendment.  The jury was entitled to find that by cashing them, Uretek acted under or affirmatively acknowledged the amendment.  *Cf. Coastal Plains Dev. Corp. v. Tech-Con Corp.*, 531 S.W.2d 143, 147 (Tex. Civ. App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.) (holding that when a party accepts and deposits a check as-written, retaining the proceeds, "it is deemed to have agreed to any conditions which

are clearly shown by the draft to have constituted part of the agreement between the parties").

Uretek argues that the $10 check it cashed "as per" the June 2010 amendment was merely a nominal sum without legal significance, and that its acceptance could not ratify the amendment. In support of this proposition, Uretek cites irrelevant cases that address whether a sale-leaseback transaction, because the leaseholder's option to purchase is supported by only nominal consideration, is a secured loan for purposes of Article 9 of the U.C.C. Uretek does not cite any authority demonstrating that the acceptance of a small sum "as per" an unexecuted contract or amendment—when the contract or amendment designates that sum as the consideration—cannot constitute ratification. Furthermore, viewing the evidence in the light most favorable to the verdict, the jury could have found that Barron took the check to Uretek's office and specifically instructed his employees to deposit it. Thus, the jury had sufficient evidence to find that by cashing the $10 check, Uretek acted under or affirmatively acknowledged the June 2010 amendment. *Cf. Coastal Plains Dev. Corp.*, 531 S.W.2d at 147.

Finally, we note that the circumstances surrounding the June 2010 meeting properly informed the jury's finding that Uretek ratified the amendment. Alvarez and Barron met in May 2010, and again in June 2010, to resolve an ongoing dispute over the amount that UdeM owed Uretek for the Metro Project. At the first meeting, an agreement was executed, four invoices were paid, and Barron indicated receipt and acceptance of the checks by signing and dating photocopies. At the second meeting, Alvarez and Barron initialed the amendment to the sublicense agreement, executed a release, and settled two more matters concerning payment for the Metro Project. As during the first meeting, Barron indicated receipt and acceptance of the checks—one

of which expressly stated that it was tendered in consideration for the amendment—by signing and dating photocopies. Uretek deposited those checks and, several months later, deposited two more checks that UdeM tendered for royalties "as per" the amendment. In addition, Alvarez testified that after the June 2010 meeting, he and Barron were satisfied that the parties had settled their disagreements. The jury could reasonably conclude that the parties had engaged in an ongoing effort to resolve the Metro Project dispute, the amendment represented part of that effort, and Uretek's deposit of payments after the June 2010 meeting ratified the amendment.

## IV.

The district court awarded UdeM $211,609.88 in attorney's fees, including fees for claims upon which UdeM did not prevail, after finding that the claims were so interrelated that the fees could not be segregated. Uretek argues that the award was error for two reasons. First, Uretek contends that the fees should have been segregated. Second, Uretek contends that UdeM's attorneys billed excessively for the removal, depositions, work by a specific attorney, and an unsuccessful summary judgment motion.

"State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Both as a matter of Texas law and pursuant to the June 2010 amendment to the sublicense agreement, UdeM, as the prevailing party in a breach of contract suit, was entitled to recover its reasonable attorney's fees. Tex. Civ. Prac. & Rem. Code § 38.001; *see also Mohican Oil & Gas, LLC v. Scorpion Exploration & Prod., Inc.*, 337 S.W.3d 310, 321 (Tex. App.—Corpus Christi 2011, pet. denied) (parties are free to contract for their own fee-recovery standard). Generally, a court may award fees only in connection with claims on which the party prevailed. *Stewart Title*

*Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex. 1991). An exception applies, however, "when the attorney's fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts." *Id.* at 11. In such cases, a court may award "the entire amount covering all claims." *Id.* Intertwined facts alone, however, can no longer trigger this exception. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006) (discussing and limiting *Sterling*). Rather, "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14.

The district court correctly found that the legal services of UdeM's attorneys advanced both recoverable and unrecoverable claims so that the services could not be segregated. Uretek's conclusory argument that the pursuit of additional claims necessarily requires additional work dodges the relevant inquiry. The test is not whether the pursuit of unsuccessful claims added to the workload in the abstract, but instead whether discrete legal services can be segregated between those devoted to the successful claims and those devoted to the unsuccessful ones. Uretek fails to show how any discrete legal service that UdeM's counsel provided could be so segregated. The district court, familiar with the progress of the litigation, did not err when it awarded unsegregated fees.

Uretek's argument that the district court failed to adequately scrutinize the fees is also wholly without merit. First, Uretek misplaces reliance on *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012). In that case, the Texas Supreme Court reversed an attorney's fee award where the affidavit listed only the total number of hours that counsel had billed in the case. *Id.* at 759. In this case, however, UdeM's counsel supplied the district court with daily billing

entries.  Moreover, Uretek simply reiterates on appeal the same objections to the billing entries that the district court carefully rejected.  The district court, in calculating the lodestar amount, expressly considered the factors specified in *Arthur Andersen & Co. v. Perry Equipment Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).  Uretek did not object to the hourly rates charged by UdeM's counsel, and the district court found that they were reasonable.  As for the hours expended, the district court observed that to defeat Uretek's damages claim, UdeM had to show that the 2010 release and 2010 amendment were valid and enforceable.    The  district  court  found  that  UdeM's  counsel  sufficiently documented the hours and did not bill excessively in light of the complex issues involved, the amounts in controversy, and counsel's experience and expertise.  Noting that "[s]ummary judgment motions are common in contract disputes," the district court found that UdeM's unsuccessful summary judgment motion was reasonable and, therefore, UdeM was entitled to fees in connection with its summary judgment motion.  *See DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 434 (5th Cir. 2003) ("[A] party may recover for time spent on unsuccessful motions so long as it succeeds on the overall claim.").

Where, as here, the district court has carefully considered the billing records and lodestar factors, and the appellant merely reiterates on appeal the contentions that the district court rejected, we will uphold the award.  *See, e.g.*, *DP Solutions*, 353 F.3d at 433–34.  This is especially true under Texas law, which presumes the reasonableness of "usual" or "customary" fees in breach of contract suits.  *Mathis*, 302 F.3d at 462.

## V.

For the foregoing reasons, we AFFIRM the judgment of the district court.